BOWLES, Administrator, Office of Price Administration, v. BEUCHER et al.

SAME v. BEUCHER.

Nos. 2431, 2433.

District Court, D. Massachusetts.

Jan. 10, 1944.

Richard H. Field, Regional Atty., and John J. Grady, Litigation Atty., Office of Price Administration, both of Boston, Mass., for plaintiff Bowles.

Stuart C. Rand and Choate, Hall & Stewart, all of Boston, Mass., and L. H. Vogel, George C. Bunge and Cassels, Potter & Bentley, all of Chicago, Ill., for defendants Nicholas Beucher and others.

Stuart C. Rand and Choate, Hall & Stewart, all of Boston, Mass., and Edward H. Baker, Jr., and Stearns & McBride, all of Chicago, Ill., for defendant Nicholas F. Beucher, Jr.

FORD, District Judge.

These are two suits, No. 2431 against copartners doing business as Nick Beucher & Sons, and No. 2433 against a single defendant, Nicholas F. Beucher, Jr., doing business as Packing House By-Products Co., for treble damages and injunctions brought by the Administrator of the Office of Price Administration pursuant to the provisions of Sections 205(a), 205(c), and 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 925(a, c, e), 56 Stat. 33 (hereinafter referred to as the "Act", and the order, as amended, issued thereunder, Revised Price Schedule No. 9.[1]

Defendants in both cases have moved to dismiss the suits on the following grounds: (1) that this court lacks jurisdiction of the parties defendant; and (2) that the venue is improperly laid in Massachusetts.

The facts, in so far as these motions are concerned, are without dispute. They are reflected in the affidavits filed in support of and opposition to the motions by the parties to these proceedings. They are as follows:

The defendants in both cases have their residences and places of business in Cook County, Illinois. None of the defendants does business in Massachusetts. Process was served on all the defendants within the territorial limits of the Northern District of Illinois.

In No. 2433, Nicholas F. Beucher, Jr., a broker in Chicago, received orders by telephone from two firms in Boston, viz., Hebb & Meakin, Inc., and American Hide & Leather Company, to purchase for their accounts certain types and grades of hides and skins. The broker in Chicago then arranged for the defendants Nicholas Beucher et als. to fill the purchase orders received by him from the Boston buyers.

The contracts were entered into by the broker, acting on behalf of the purchasers, with the defendants at Chicago for the sale

---

[1] The pertinent sections of this Schedule are as follows:

"Sec. 1314. 2 *Maximum prices established for kips and calfskins.* * * * no person shall sell or deliver, or offer to sell or to deliver, any kips or calfskins, whether for immediate or future delivery, and no person shall buy, or accept for delivery, any kips or calfskins, whether for immediate or future delivery, at a price exceeding the maximum prices * * *.

"Sec. 1314. 4 *Commissions.* In the event that a seller of hides, kips or calfskins shall employ a broker to sell hides, kips or calfskins on his behalf, or in the event that a buyer shall employ a broker to buy, receive and ship hides, kips or calfskins on his behalf, a brokerage commission of not more than 3% of the purchase price may be charged for such services and added to the applicable maximum price established hereunder. * * *"

and delivery of the quantity of hides sought by the purchasers. A representative of the seller graded certain hides and skins from time to time in the presence of a representative of the broker in Chicago. In accordance with shipping instructions received by the broker from the buyers and transmitted by the broker to the seller, these hides and skins were loaded by employees of the seller on board railroad cars in Chicago, Illinois, for shipment to the Boston buyers. After the cars had been loaded, they were sealed in Illinois. The hides and skins were then transported from Illinois into this district in accordance with the shipping instructions. In the Hebb & Meakin transactions the shipments were consigned by defendants, Nicholas Beucher et als., to the order of themselves at Salem, Massachusetts; in the American Hide & Leather Company transaction complained of, the shipment was consigned to the buyer at Lowell, Massachusetts. Invoices prepared by the seller were mailed from Chicago by the seller to the buyers in Boston. Copies of said invoices were also delivered by the seller to the broker. The latter also prepared invoices which he mailed to Hebb & Meakin, Inc., in Boston. This purchaser prepared checks in payment thereof which it mailed to the broker from Boston and which were later collected in Boston. In the Hebb & Meakin transactions, bills of lading to the order of the seller endorsed in blank by the seller with sight drafts drawn on Hebb & Meakin, Inc., through The First National Bank of Boston, were presented by the seller's bank in Boston to the buyer in Boston in accordance with the confirmations. The drafts were accepted by the buyer and were collected, after which the bills of lading were surrendered to the buyer at Boston. In the American Hide & Leather Company transaction, a bill of lading with sight draft attached was presented by the seller's bank in Boston to the buyer in Boston; the sight draft was collected and the bill of lading was surrendered to the buyer in Boston. In all the transactions, the railroad cars having arrived in this district, the seals were broken here and the hides and skins were unloaded and the buyers took possession of them within this district.

The defendant Nicholas F. Beucher, Jr., is charged with violating the Emergency Price Control Act, as amended, only in the aforesaid Hebb & Meakin transactions.

It is plain, process having been served upon the defendants in Illinois, where they reside, pursuant to the provisions of Section 205(c) of the Act, that this court has personal jurisdiction over the defendants if the venue is properly laid in Massachusetts.

The pertinent language in that section reads as follows: "* * * such other proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred, * * * and process in such cases may be served in any district wherein the defendant resides * * *."

■■ In deciding the question of venue, the question to be answered is whether any part of any act or transaction constituting the violations charged occurred in Massachusetts. It is apparent that Congress intended by the language used in Section 205(c) to confer on those charged with the enforcement of the act a wide discretion as to where proceedings for violations could be brought. No citation of authorities is needed to show Congress had the power to do this and to authorize process of the court where the suit is properly brought to extend to the jurisdiction where the person resides or may be found.

Under the Revised Price Schedule No. 9, set out above in the margin, it is forbidden among other acts or transactions to "sell *or* deliver" specified commodities in excess of the price maximum. (Emphasis mine.)

The defendants in No. 2431 argue that the sale of the hides in question was made in Illinois and the delivery was complete under Illinois law, where the Uniform Sales Act is in force, Ill.Rev.Stat.1943, c. 121½, 1 et seq., when the hides were loaded upon the cars in the Northern District of Illinois. The contract of sale called for delivery f. o. b. cars at Chicago. There might be some force to this argument if the words "or deliver" in Section 1314.2 of the Price Schedule merely meant "delivery of property or title". But delivery in its natural sense means something in addition to delivery of property or title. This is pointed out in cases without number and an excerpt from the case of Morse v. Sherman, 106 Mass. 430, explains the differences in meaning. That case states at page 433: "The term 'delivery' is used in the law of sales in very different senses. It is used in turn to denote transfer of title and transfer of possession; and where the parties have agreed, and the specific articles are appropriated and accepted, then, independently of the statute of frauds, it is

often said, there is sufficient delivery to pass title, although there be no transfer of possession. And this must be so, in order to be consistent with the lien which remains to the vendor for the price. 2 Kent Com. (6th ed.) 492." And cases cited.

It will be noted that the Administrator does not merely charge as the violation that the goods were "sold", but also that the goods were "delivered" in Massachusetts. It is fair to assume that the Administrator would not have used the term "deliver" in the regulations promulgated under the act unless he intended to mean something beyond what a sale ordinarily means, that is, a transfer of property or title. See Massachusetts Uniform Sales Act, Mass.General Laws (Ter.Ed.) c. 106, sec. 3(2), and definition of "sale" in Section 302 of the Act, 50 U.S.C.A.Appendix § 942. The term "delivery" is not defined in the act, but it is defined in the Uniform Sales Act, in force both in Illinois and Massachusetts, as a "voluntary transfer of possession from one person to another". Mass.General Laws (Ter.Ed.) c. 106, sec. 65. This is the plain and natural meaning of the word "delivery". See Hallgarten v. Oldham, 135 Mass. 1, 9, 46 Am.Rep. 433. It is reasonable to assume, under the circumstances, that the term "deliver" in the regulation has a meaning distinct from "sale" and the term is used in its plain and natural sense—a transfer of possession. If it had no added significance it would be hardly necessary to employ it at all. Again, it may be assumed that the Administrator knew the broad provisions under the act as to venue and in drawing the regulation had perfectly obvious reasons for not confining his prosecution under the act to the jurisdiction where the hides were sold and for extending them to where they were delivered as well.

Whether there was a change or transfer of possession in Massachusetts is now the question that confronts us.

The calfskins were in all cases shipped under a sight draft and bill of lading whereby the defendants retained physical control of the goods until the purchase price was paid to the defendants' agent for collection in Massachusetts. On payment of the sight draft to the First National Bank of Boston, and not until then, the purchasers acquired the bill of lading. This constituted a symbolic delivery which the purchasers later translated into actual delivery from the carrier. At this point, viz., transfer of the bill of lading, there was a transfer of possession—delivery within ·the meaning of Revised Price Schedule No. 9; it was completed in Massachusetts and was part of the transaction constituting the violation charged in the complaint. That there was a reservation of right to possession of the goods and a transfer to the buyer under the circumstances here is borne out by the provisions of the Uniform Bills of Lading in force in both Illinois and Massachusetts. Cf. Mass.General Laws (Ter.Ed.) c. 108, sec. 38(b) and (c).

We now proceed to the question as to whether any part of any act or transaction constituting the violations charged against Nicholas F. Beucher, Jr., in No. 2433, occurred in Massachusetts.

The complaint in this suit charges two violations: (1) that the defendant charged for commissions more than 3% of the legal purchase price of the calfskins—the maximum allowed by Section 1314.4 of the Price Schedule—because the commissions were computed on the basis of the allegedly excessive prices charged by the defendants in No. 2431 (complaint paragraphs 5 and 6) and (2) that he "accepted for delivery" the lot of calfskins referred to in the Hebb and Meakin transactions (paragraph 7 of the complaint.) (Sec. 1314.2 of the Schedule.)

With respect to the latter allegation, that he accepted the hides in question for delivery, the affidavits reflect that what the defendant in substance did in accordance with his duties as broker was to locate a seller in Chicago, inspect the hides, supervise their bundling at the seller's and placement aboard the railroad cars at Chicago in accordance with shipping instructions received from the purchaser Hebb and Meakin, Inc. Further than this, the defendant had nothing to do with the hides. The "acceptance" of the hides is the gravamen of the violation charged. "Acceptance for delivery" plainly means "acceptance for the purpose of delivery"; it does not mean "acceptance and delivery", so that even though the delivery, as stated above in No. 2431, did take place in Massachusetts, it was not a part of the violation with which this defendant is charged. It seems plain that any acceptance of the hides for delivery commenced and ended in Chicago and no part of the acts or transactions constituting the alleged violation in para-

graph 7 of the complaint took place in Massachusetts.

■ With respect to the excessive charge for commission, the court reaches the same result. The sale of the hides was completed in Chicago. The other duties to be performed by the broker were performed there also—the receipt and shipment of the hides. When these duties were performed the broker's job was finished and he was entitled to charge his commission, which he did in Chicago, the last circumstance of the charge being embraced in his invoice, which he mailed in Chicago. No part of the act or transaction constituting an alleged excessive charge or transaction of commission took place in Massachusetts.

From the foregoing, it follows that this court has jurisdiction in No. 2431 and the motion to dismiss is denied. In No. 2433 the venue is improperly laid. This court has no jurisdiction and the motion to dismiss is allowed and the complaint dismissed.