**UNITED STATES of America**

v.

**Esther SHAPIRO, individually and trading as Southwark Cooperage Company.**

Civ. A. No. 13637.

United States District Court,
E. D. Pennsylvania.

March 10, 1955.

W. Wilson White, U. S. Atty., Francis Ballard, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

James Conwell Welsh, Philadelphia, Pa., for defendant.

CLARY, District Judge.

This is an action by the United States to recover damages from defendant Esther Shapiro, individually and trading as Southwark Cooperage Company. The basis of the complaint is alleged violation of the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq., P.L. 774, 81st Cong., Executive Order 10161, 15 F.R. 6105, 50 U.S.C.A.Appendix, § 2071 note, Economic Stabilization Agency General Order No. 2 (16 F.R. 738) and Ceiling Price Regulation 36 (16 F. R. 4451) of the Director of Price Stabilization establishing specific ceiling prices for certain used steel drums, raw and reconditioned, and for services performed in reconditioning such drums. The ceiling price fixed for the sale of the drums involved in the present litigation was $4 per drum and the ceiling price for reconditioning was $2 per drum. From the pleadings and proof I make the following

## Findings of Fact

1. Defendant Esther Shapiro is an individual, trading as Southwark Cooperage Company (hereinafter called Southwark), engaged in the business of purchasing, selling and reconditioning used steel drums, and whose principal place of business is located at Meadow and Wolf Streets, Philadelphia, Pennsylvania.

2. Tiona Petroleum Company (hereinafter called Tiona) is a corporation engaged in the business of dealing in oil and oil products.

3. Southwark and Tiona for a period of some fifteen years prior to 1951 had been doing business with each other, during which time Southwark sold Tiona many steel drums on a credit basis.

4. Some two or three days prior to May 9, 1951, a Mr. Gleeson, purchasing agent for Tiona, called upon Mr. Morris Shapiro, son of the defendant and the general manager of Southwark, at Southwark's place of business, to discuss the purchase of steel drums for use in Tiona's business.

5. On the first call Mr. Gleeson examined some 2,500 used raw steel drums which Southwark had for sale. Dealing at arm's length, they negotiated for the sale of the drums and reached a tentative price of $4.90 per drum. After the preliminary negotiations, Mr. Gleeson called his superiors in Tiona on the telephone from Southwark's office, and after that conversation told Mr. Shapiro that the drums and the price were satisfactory and that he would confirm the oral agreement of sale by written order.

6. On May 9, 1951, Tiona issued its purchase order for the 2,500 steel drums, which order was mailed by Tiona to Southwark and received by Southwark in due course.

7. One of the terms of the contract of purchase by Tiona was that Southwark would set aside in sheds No. 1 and No. 2 on Southwark's premises (where they were then stored) the identical steel drums selected by Mr. Gleeson on behalf of Tiona. Southwark made effective delivery of the drums under the oral agree-

ment of sale to Tiona at its own place of business on or about May 7, 1951, and Tiona accepted such delivery under said oral agreement.

8. On May 9, 1951, some two or three days after the conversations related above, Mr. Gleeson of Tiona called Mr. Shapiro on the telephone and negotiated with Mr. Shapiro for the reconditioning of the steel drums which he had purchased for Tiona a few days previously. A unit price of $1.10 per drum was agreed upon and a written confirmation of this transaction was issued by Tiona on May 10, 1951, which confirmation was received by Southwark in due course.

9. Regulation 36 (16 F.R. 4451) was issued on May 11, 1951, effective May 16, 1951, fixing the ceiling price of used steel drums at $4 per drum and a ceiling service price for total reconditioning at $2 per drum.

10. Thereafter and on the following dates 2,500 totally reconditioned steel drums were delivered by Southwark to Tiona at its place of business:

| Date | Quantity |
| --- | --- |
| 5/21/51 | 167 |
| 5/22/51 | 32 |
| 5/24/51 | 185 |
| 5/26/51 | 164 |
| 5/28/51 | 140 |
| 5/29/51 | 107 |
| 5/31/51 | 164 |
| 6/1/51 | 164 |
| 6/7/51 | 111 |
| 6/8/51 | 30 |
| 6/13/51 | 126 |
| 6/15/51 | 108 |
| 6/18/51 | 47 |
| 6/22/51 | 164 |
| 6/25/51 | 311 |
| 6/27/51 | 185 |
| 7/2/51 | 163 |
| 7/6/51 | 132 |
| Total—2,500 | |

11. The purchase price of the drums, $12,250, was paid by Tiona to Southwark, by check, on May 24, 1951, in accordance with their established business practices.

12. On each of the dates set forth in Finding No. 10 above, Tiona paid Southwark a sum of money equal to $1.10 times the number of drums shipped on each said date.

Discussion

The Government admits that what it calls a violation by defendant of Ceiling Price Regulation 36 was neither willful nor the result of gross negligence. The Government argues, however, that there is a technical violation of the regulation and that the defendant is liable in simple damages on either one of two theories. First, that the entire transaction between Southwark and Tiona should be viewed as a single contract for the sale of "reconditioned steel drums" consummated after the effective date of Regulation 36 at a price in excess of the maximum therein prescribed; or, second, even if the transaction is viewed as two contracts a "delivery" of the drums was not made until after the effective date of Regulation 36 which by its language proscribes sale or delivery of any drums covered by the regulation at a price in excess of the applicable ceiling price set forth in the Regulation (Sec. 2(a) ).

I have no difficulty in determining from the facts adduced and the actions of the parties that there were two separate and distinct contracts. First, there was a contract covering the sale of 2,500 raw used steel drums and, second, a contract, after title to the drums had passed to Tiona, for their reconditioning. The parties negotiated these transactions on separate occasions; separate orders were written by Tiona; separate considerations were recited; the financial arrangements as to the two transactions were completely different; and the sale and passage of title of the drums from Southwark to Tiona was in no way conditioned upon the order for reconditioning. Parenthetically, it might be noted that although these transactions occurred before the effective date of the regulation and certainly at a time when the defendant herein was not shown to have had knowledge of the impending regulation, the conduct of the parties

was in accord with the spirit and wording of the regulation. The regulation expressly forbids tie-in agreements, and that these transactions do not constitute tie-in agreements is conceded by the Government. Each transaction stands alone—separate and complete. Therefore, there is no necessity to prolong a discussion of the Government's first theory.

As to the second and probably stronger position, the Government argues that this Court must construe the word "delivery" as used in the regulation so as to give it its ordinary and usually accepted meaning, that is, a voluntary transfer of possession from one person to another and not its legal counterpart, delivery of title. In support of this position the Government cites three cases, Bowles v. Ward, D.C.W.D.Pa., 1946, 65 F.Supp. 880; Bowles v. Beucher, D.C.Mass., 1944, 53 F.Supp. 984, and Schreffler v. Bowles, 10 Cir., 1946, 153 F.2d 1. All these cases differ in their facts from the instant case but they do enunciate the principle of law advanced by Government's counsel. The entire argument stems from the use of the disjunctive, the regulation reads "sale or delivery" as contrasted to "sale and delivery". There is no doubt that these cases do interpret the words "sell or deliver" as used in statutes or regulations to comprise two separate and distinct acts. They do not, however, warrant a conclusion that Southwark in this instance has violated Ceiling Price Regulation 36.

It is beyond dispute that under Pennsylvania law when the bargain was struck, a few days prior to May 9th, title to the 2,500 drums vested in Tiona. Southwark no longer considered these drums to be part of its stock in trade but rather considered them to be the property of the purchaser Tiona. Tiona likewise considered them to be its property. From that point on, control, risk of loss and all the other incidents of title were with the purchaser, and not this defendant. Tiona could have had the drums shipped to it or to anyone else it desired.

Had the drums been taken immediately to Tiona, this action could never have arisen; but Tiona wanted something done to the drums. It wanted them reconditioned. Reconditioning, of course, would involve, according to the evidence, considerable time and the use of rather extensive washing facilities. It is clearly apparent from the testimony that while there was no requirement that the drums remain on defendant's premises, they remained there for the advantages of Tiona. It would have been a waste of time, energy and money to have transported the drums to Tiona and back to Southwark for reconditioning. The law never requires parties to perform idle acts. The "deliveries" under the second contract were deliveries of reconditioned drums only and the price paid was only for the services of reconditioning the drums, which price was substantially below the ceiling price fixed in the regulation. Consequently, there was no violation of the regulation and the Government is not entitled even to simple damages.

### Conclusions of Law

1. On or about May 7, 1951, Southwark sold Tiona 2,500 used steel drums, title to which steel drums passed to Tiona on that date.

2. On May 9, 1951, Southwark agreed to recondition the 2,500 steel drums at a unit price of $1.10 per drum, which unit price was not in violation of Ceiling Price Regulation 36.

3. Southwark made delivery of 2,500 used raw steel drums to Tiona before the effective date of Ceiling Price Regulation 36.

4. Southwark made delivery to Tiona of 2,500 steel drums, which it had reconditioned, within the period of the regulation, and at a price for reconditioning substantially under the applicable ceiling price.

5. Southwark did not violate Ceiling Price Regulation 36 in its transactions with the Tiona Petroleum Company.

6. Plaintiff is not entitled to recover from the defendant any sum of money for violation of Ceiling Price Regulation 36.

7. Judgment may be entered for the defendant.