LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellant, v. CHARLES R. FISCHER, Commissioner of Insurance, et al., Appellees.

No. 46625.

JANUARY 9, 1945.

Henry & Henry, of Des Moines, for appellant.

John M. Rankin, Attorney General, and R. O. Garber, of Des Moines, for appellees.

MANTZ, J.—The plaintiff, an insurance corporation of the state of Indiana, licensed. to carry on life-insurance business in the state of Iowa, brought suit herein against Charles R. Fischer, Commissioner of Insurance of the State of Iowa, and also against the Treasurer and the Comptroller of this state, to compel a refund of certain insurance taxes paid to the defendants for certain years following the year 1932. Plaintiff is the assignee or agent of two insurance companies formerly carrying on the business of writing insurance in Iowa, to wit, the Royal Union Life Insurance Company of Des Moines, and the Iowa Life Insurance Company of Waterloo, both of which companies, by reason of receiverships, were taken over by the State Insurance Department of Iowa and later, by proper court proceeding, transferred to plaintiff under reinsurance contracts. This action was brought by plaintiff as the assignee and present holder of the

property of said companies to compel a refund of certain taxes paid to defendants growing out of business transacted for and on behalf of such companies. Under the reinsurance contract the plaintiff was to collect premiums on policies outstanding in each of said companies at the time taken over, keep same in a separate fund, and use this fund to pay losses as they occurred.

The petition is in six counts, the first three relating to taxes paid on business transacted for the Royal Union and the last three relating to tax payments paid on behalf of the Iowa Life Insurance Company. Briefly stated, the petition claimed that during various years since 1932 there had been paid to the insurance department of the state of Iowa taxes based upon the premiums received by plaintiff on policies in such two companies in the state of Iowa, and that through mistake and erroneous interpretation of section 7022, Code of 1939, said premium taxes were paid, and that under the provisions of section 8613.3, Code of 1939, plaintiff is entitled to a refund for such sums paid, and plaintiff prayed that such refund be ordered and that the Insurance Commissioner of Iowa be enjoined from in any manner interfering with the rights of plaintiff to carry out its business in Iowa because of its carrying out such reinsurance contracts.

Count I related to premium-tax payments made to defendants in 1942 for and on behalf of the Royal Union and for premiums collected by plaintiff in 1939, 1940, and 1941. Count IV related to insurance-tax payments made to defendants in 1942 for and on behalf of the Iowa Life Insurance Company and for premiums collected by plaintiff in 1939, 1940, and 1941.

To Counts II, III, V, and VI defendants filed a motion to dismiss. The grounds stated in said motion were identical. The said motion to dismiss, as directed to said counts, is as follows:

"1. That the taxes alleged to have been paid in the said Count II to the Treasurer of the State of Iowa, were paid voluntarily and are, therefore, not subject to refund, recovery or transfer as claimed by the Plaintiff.

"2. That said taxes having been paid voluntarily, Plaintiff is entitled to recover only on statutory authority. That Section 8613.3 of the 1939 Code, under which recovery and refund is here sought, does not create or endow the Plaintiff with a cause of action for refund, recovery or transfer.

"3. That the cause of action alleged in said Count II of the Amended and Substituted Petition, is a suit against the State of Iowa, to which the consent of the State has not been given.

"4. That the said cause of action, if any, alleged in Count II accrued immediately upon the payment of taxes alleged to have been paid, is barred by Statutes of Limitation of the State of Iowa, and more particularly by Section 84.13 and Sub-section 4 of Section 11007 of the 1939 Code of Iowa, and by Section 393 of the 1931 Code of Iowa, and Section 84E13 [84-e13] of the 1935 Code of Iowa.

"5. That Section 8613.3 of the 1939 Code of Iowa, referred to in Count II of Plaintiff's Amended and Substituted Petition, endows the Commissioner of Insurance, Defendant herein, with discretionary power with respect to the refund of the taxes alleged to have been paid, and the exercise of his discretion herein is not the subject of inquiry or control by the Court.

"6. That the relief sought can neither be imposed nor enforced by a Court of Equity."

It will be noted that the defendants did not in any manner attack Counts I and IV. The court in ruling on the motion to dismiss overruled the same as to certain paragraphs in each of said four counts and sustained it as to other paragraphs of each. Both parties refused to plead over, electing to stand upon the pleadings, and the court entered judgment and decree which in effect held that plaintiff was entitled to a refund for tax-premium payments made within the five-year period in which the payments were made, and denied the claim of defendants that plaintiff had no right to maintain the action, and also that the three-year statute of limitations as claimed by defendants did not apply. Both parties have appealed.

I. The appeal on behalf of plaintiff claims that the court erred in not allowing refund of tax-premium payments made in the years 1934 to 1937 inclusive. In other words, the plaintiff claims that subsection 5, section 11007 does not apply to the payments made in such years.

The appeal of defendants is based upon the claim that the court erred in allowing plaintiff a refund of taxes paid in 1938 and 1939, and in holding that subsection 5, section 11007 applied

therein; also that the court erred in holding that section 8613.3 applied and that thereunder plaintiff was entitled to a refund.

Briefly stated, the plaintiff claims that under the provisions of section 8613.3 it was entitled to recover insurance-premium taxes paid by it prior to 1938, and that subsection 5, section 11007 did not apply, while the defendants claim that plaintiff could not maintain the suit under section 8613.3 of the Code and that if recovery was permissible thereunder said claims were barred under other Code provisions, particularly subsection 4, section 11007, Code of 1939.

Hereinafter in this opinion the Lincoln National Life Insurance Company will be referred to as appellant and Charles R. Fischer, Commissioner of Insurance of the State of Iowa, et al., defendants, will be referred to as appellees.

II. We think it logical to first take up and determine the claim of appellees that appellant has no right to maintain the action under the provisions of section 8613.3. If the appellees are right in their contention that appellant cannot maintain the action and is entitled to no relief thereunder, then, so far as the claims based upon Counts II, III, V, and VI, are concerned, the court erred in holding that appellant could recover therein. Further, should we find that appellant could properly proceed under said section 8613.3, then the next question raised by appellees presents itself, Did the court err in holding that the three-year statute of limitations (paragraph 4, section 11007) did not apply but that the statute which did apply was the five-year statute under Code section 11007, being subsection 5?

It will be noted that appellees do not question the right of appellant to relief under Counts I and IV of its petition. In said counts appellant seeks to recover under section 8613.3 and appellees do not resist such claim. To concede on the one hand that appellant has a right to recover and contest it on the other hand, the only difference being the years in which the premium taxes were paid, strikes us as being somewhat inconsistent. For if, as appellees claim and argue, appellant, under section 8613.3 had no right to recover premium taxes in 1939, he would have no right to collect under that statute similar taxes paid in any

other year. It all went to the question of his right, power, and authority, regardless of time.

As before stated, appellant bases its right to recover under section 8613.3 which is as follows:

"Refunds. Whenever it appears to the satisfaction of the commissioner of insurance that because of error, mistake, or erroneous interpretation of statute that a foreign or domestic insurance corporation has paid to the state of Iowa taxes, fines, penalties, or license fees in excess of the amount legally chargeable against it, the commissioner of insurance shall have power to refund to such corporation any such excess by applying the amounts thereof toward the payment of taxes, fines, penalties, or license fees already due or which may hereafter become due, until such excess payments have been fully refunded."

This statute took effect July 4, 1929. The parties are in agreement that prior to the enactment of this statute there could be no recovery in the courts for insurance-premium taxes paid and the only recourse was to ask the legislature to refund the same.

Appellees make the statement in argument that, so far as it relates to the rights, powers, and duties of the Insurance Commissioner to make refunds or to be coerced into so doing, this statute has not been construed by this court, and consequently the case is one of first impression.

We do not understand that appellees question the claim of appellant as set forth in its petition as to the amounts paid, its source, how computed, or the times of payment. The motion to dismiss admits such and appellees do not argue to the contrary. In effect, the Insurance Commissioner says:

"I admit that through error, mistake, or erroneous interpretation of the statute you paid the sums sought to be refunded and at the times claimed by you; that you were not legally liable therefor and the state was not entitled thereto; that the amounts which you paid were based upon insurance premiums in companies no longer doing business in Iowa; that I still have the sums paid; that under the statute you have no power or authority to compel me to make a refund, as the statute gives me discretion in the matter of making refunds."

· Does the statute in question bear out any such construction? We think not. This cannot be true in a situation where the court has by decree determined that the state is not entitled to the sum paid, and where the amount sought to be recovered is certain, fixed, and definite and no dispute exists as to such matter.

Bearing in mind that previous to this statutory enactment, section 8613.3, there existed no judicial machinery for the recovery of taxes paid on insurance premiums where the same were paid by reason of error, mistake, or erroneous interpretation, and the only relief was by application to the legislature, to apply the construction claimed by appellees would be to nullify the very statute enacted to give relief in such cases. It seems absurd to argue, in the face of the record such as here exists, that the Insurance Commissioner does have or ought to have such power and authority as he claims herein. To concede that power, in effect, would render meaningless the statute.

We think that the answer to that contention is found in our recent holding in the case of American United L. Ins. Co. v. Fischer, 234 Iowa 460, 461, 467, 11 N. W. 2d 573, 574. The issues in that case were practically the same as in the present case. There, as here, there was a suit to compel the refund of insurance-premium taxes paid to the defendant by a company whose home office was in Indiana, which company, under court decree and approved reinsurance contract, had taken over the assets and liabilities of the American Life Insurance Company of Detroit, which Michigan company had been authorized to carry on life-insurance business in Iowa and had gone into receivership under our statute. The relief demanded was a return of insurance-premium taxes already paid, and an injunction to restrain the Insurance Commissioner from interfering with the future business of plaintiff on account of its refusal to pay taxes on business growing out of such reinsurance contract. This court in that opinion granted the relief sought and ordered a refund of premiums paid. The lower court in the present case has followed the holding of this court in that case. In that case this court, through Smith, J., said: "This suit is to recover the amount of same [taxes collected in 1939, 1940, and 1941] and to enjoin the collection of the tax on similar premiums to

be collected in the future. The trial court ordered refund of the taxes paid on account of premiums collected by the receiver but denied plaintiff any further relief.'' In that case both parties appealed. After discussing the authorities this court said: ''It follows that the district court properly ordered refund of the taxes paid on account of premiums collected by the receiver * * * .'' This court reversed the lower court on its refusal to grant injunctive relief. It would seem that our holding in the American United is controlling here.

The appellees argue strenuously that section 8613.3 does not, in express terms, create a cause of action. Appellees admit that this court has not passed upon such statute as respects the claim which they make thereunder. We have examined the authorities cited and are unable to agree with appellees as to the construction of the statute.

As above stated, we think that our holding in American United L. Ins. Co. v. Fischer, supra, is authority contrary to the claim of appellees.

Appellees' claim is that the statute, section 8613.3, is permissive and not mandatory. We will examine a few of the authorities dealing with that matter. The general rule respecting that matter is set forth in 103 A. L. R. 812 [annotation], as follows:

''There is no universal rule by which directory words in a statute may, under all circumstances, be distinguished from those which are mandatory; but it may be stated generally that whenever the public interest or individual rights call for the exercise of a power which has been given to public officers, the language used in conferring the power, although permissive in form, is, in effect, imperative. The above rule has been applied in a number of cases involving constitutional or statutory provisions relating to payment of debts of, or claims against, states, towns, cities * * *.'' '

We desire to call attention to the case of Supervisors v. United States, 71 U. S. 435, 447, 18 L. Ed. 419, where there was involved the construction of an Illinois statute, wherein the-same claim was being made as appellees make here. That statute says: ''The board of supervisors * * * *may, if deemed advisable,*

*levy a special tax * * *.''*   (Italics ours.)   There a creditor held a judgment against an Illinois county and the board of supervisors was asked to order an assessment on taxable property to pay the judgment.   They declined and suit was brought.   The court ordered the assessment and appeal was prosecuted to the United States Supreme Court.   That court upheld the order of the lower court and made a rather extensive survey of the authorities.   In its decision that court, Swayne, J., said:

''In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.'   The line which separates this class of cases from those which involve the exercise of a discretion, judicial in its nature, which courts cannot control, is too obvious to require remark.   This case clearly does not fall within the latter category.''   Citing People ex rel. Oebricks v. Superior Court, 5 Wend. 114, 125; People ex rel. Oelricks v. Superior Court, 10 Wend. 285, 289; People v. Vermilyea, 7 Cow. 369, 393; Hull v. Supervisors, 19 Johns. 259, 260, 10 Am. Dec. 223.

We will content ourselves with a few citations which we think sustain the holding that under a situation such as appears in the record in this case the Insurance Commissioner does not have any discretionary powers in the case.   Hotel Casey Co. v. Ross, 343 Pa. 573, 23 A. 2d 737; annotation 103 A. L. R. 812–817; Commercial National Bk. v. Board of Supervisors, 168 Iowa 501, 150 N. W. 704, Ann. Cas. 1916C, 227; Brenner v. City of Los Angeles, 160 Cal. 72, 79, 116 P. 397, 400; People ex rel. Central Bank v. Supervisors of County of Otsego, 53 Barb. 564, 51 N. Y. 401; City of Indianapolis v. McAvoy, 86 Ind. 587.   We quote from the Brenner case, supra:

'' 'Where the public interest or private right requires that the thing should be done, then the word ''may'' is generally construed to mean the same as ''shall.''   (People v. Supervisors, 68 N. Y. 119.)   Where the statute directs the doing of a thing for the sake of justice or the public good, the word ''may'' is the same as the word ''shall.''   (Rex v. Barlow, 2 Salk. 609.)   Where a statute directs a thing to be done for justice's sake *may* means *shall*.   (Silvey v. United States, 7 Court of Claims, 334.)   Where

persons or the public have an interest in having the act done by a public body, *may* in such a statute means *must*. (Phelps v. Hawley, 52 N. Y. 27; People v. Supervisors, 51 N. Y. 401. See Estate of Ballentine, 45 Cal. 696.)' [Hayes v. County of Los Angeles, 99 Cal. 74, 80, 33 P. 766, 768.]''

Many other cases might be cited but we feel that the above are sufficient to sustain a holding adverse to the claim of appellees.

We recognize that there may be found cases from various courts which do not fully agree with the finding of this court as above set forth. Some of these cases are based upon particular statutes and some turn upon certain facts existing in the case.

However, looking at the situation from the standpoint of the history and purpose of the statute, also that relating to justice and fair dealing, we find ourselves unable to see why a state or an individual should be permitted to hold property to which the holder has neither legal nor moral claim. Where a state secures money paid to it as taxes under the erroneous or mistaken belief that it was owing, and it refuses to refund, it would be a travesty upon justice to deny the one justly entitled thereto the right to recover.

We prefer to follow the reasoning of the court in the case of Craig v. Security Producing & Refining Co., 189 Ky. 565, 568, 225 S. W. 729, 730, wherein that court said:

''Manifestly the purpose of the legislature in passing section 162, supra, was to secure the return of all money paid into the treasury as taxes by taxpayers through mistake, inadvertence, misapprehension of the law, or under void or unenforceable statutes, for it expressly declares it to be the duty of the auditor to issue his warrant in every case where it shall appear to him that the state holds money rightfully and in good conscience belonging to another. * * * The auditor can not act arbitrarily in the payment of money but will be held to strict accountability for all money paid out by him. In doubtful cases he should refuse payment until the question has been determined by the courts. * * * We can think of no reason why the state should not be required to live up to the same moral standards demanded of individuals and repay money received

by it through mistake or inadvertence. Any other rule is unconscionable and bad in morals if not actually dishonest. The state should not, merely because it has the power to declare the law, take to itself money rightfully and in good conscience belonging to its citizens and taxpayers without just return. Such a statute would be both arbitrary and unjust and we can not conceive of the great lawmaking department of this Commonwealth contemplating such a thing by the enactment of section 172 Kentucky statutes. Such a purpose, if expressed in a statute, would be inimical to all the past declared public policy of the state.''

III. Appellees argue at some length the proposition that taxes paid voluntarily cannot be recovered by court action. The record in this case shows that the taxes prior to 1940 were paid voluntarily and without protest, but that they were paid by reason of error, mistake, and erroneous interpretation of Code section 7022. Taxes paid voluntarily could not be recovered under the common law. Lindsey v. Boone County, 92 Iowa 86, 60 N. W. 173; Newcomb v. City of Davenport, 86 Iowa 291, 53 N. W. 232. This rule, however, does not obtain in the face of an express statute. It seems to us that section 8613.3 is a complete answer to appellees' claim that taxes paid voluntarily cannot be recovered. We think that statute was enacted for the purpose of allowing recovery of taxes paid whether the payment was voluntary or otherwise. See Lauman v. Des Moines County, 29 Iowa 310, 313; Slimmer v. Chickasaw County, 140 Iowa 448, 118 N. W. 779, 17 Ann. Cas. 1028; Dickey v. Polk County, 58 Iowa 287, 12 N. W. 290; Hewitt & Sons Co. v. Keller, 223 Iowa 1372, 275 N. W. 94.

In the Lauman case there was a statute providing that there should be a refund of taxes ''that shall afterward be found to be erroneous or illegal.'' In ordering a refund this court held that it was not material whether the payment was made with or without protest.

IV. We next take up the question raised in this case and in the respective briefs and arguments of the parties as to the applicability of the statute of limitations as directed to appellant's claim. The lower court held that subsection 5 of section 11007 governed, thereby finding that what is termed the five-

year statute applied and that appellant was not entitled to a refund of any taxes paid for years prior to 1938, thereby denying appellant's claim for refund of taxes paid during the years 1934 to 1937, inclusive. In so holding the lower court did not err.

Appellees claimed that the recovery, if allowed, was governed by subsection 4 of section 11007, such being termed the three-year statute; also by section 84.13, Code of 1939; section 393, Code of 1931, and section 84-e13, Code of 1935.

The appellant bases its appeal upon the claim that none of the provisions of the Code set forth by appellees or cited by the court applies and claims that its right to a refund is to be governed by the provisions of section 8613.3. It is the claim of appellant that section 8613.3 is an exception to that part of section 11007, which reads as follows: "Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared." Paragraph 5 of section 11007 is as follows:

"Unwritten contracts—injuries to property—fraud—other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

This statute was a part of the Code of 1851, where it appears as section 1659. It is the claim of appellant that inasmuch as section 8613.3 is the later enactment. it is an exception referred to in the first paragraph of said section 11007. Appellant argues that the refund statute, 8613.3, is a specific exception to the general statute of limitations, and that being a later enactment and being in conflict therewith, the latest will govern. That section 8613.3 is the later enactment cannot be questioned. Under the general rule, where two statutes govern or concern the same matter the last will be applied. As to appellant's claim that sections 8613.3 and 11007 are in conflict, we are unable to agree therewith. Section 8613.3 in terms places no time limitation upon the right of claimants thereunder to a refund.

██ Appellant bases its argument upon the language of said section, and in particular on the first word thereof, ''whenever.'' It argues that the use of this word constitutes a ''special declaration'' within the contemplation of the statute of limitations and permits a refund at any time, regardless of the general statute. It argues that to declare otherwise would render the word ''whenever'' meaningless.

We do not think the word ''whenever'' as used in that statute carries the meaning claimed by appellant. The word has been defined by lexicographers and various courts. Black's Law Dictionary (Third Ed.), 1842, defines ''whenever'' as ''as long as,'' and cites Moore v. Johnson, 85 N. J. Law 40, 88 A. 699. Websters New International Dictionary defines ''whenever'' as meaning ''at whatever time.'' The word ''whenever'' is an adverb of time and is often used as the equivalent of ''as soon as.'' School Dist. v. Board of Education, 110 Kan. 613, 204 P. 758. Williams v. Potter, D. C., N. Y., 210 F. 318. ''* * * it [whenever] carries the same meaning as the word 'if.' '' Louisiana & A. Ry. Co. v. Woodson, 127 Ark. 323, 331, 192 S. W. 174; People v. Melone, 73 Cal. 574, 15 P. 294; Crawford v. Weidemeyer, 93 Ohio St. 461, 113 N. E. 267; Wandell v. Johnson, 71 Mont. 73, 227 P. 58; Kennebec & P. R. Co. v. Portland & K. R. Co., 59 Maine 9; Bloss v. State, 127 Tex. Crim. Rep. 216, 75 S. W. 2d 694; Whitcomb v. Rood, 20 Vt. 49. ''In the latter sense it [whenever] is sometimes a word of condition, or contingency * * *. In statutes the word is frequently employed as equivalent to the word 'if.' '' 40 Cyc. 921. See, also, Griffin v. United States, D.C., Ga., 270 F. 263; Ex parte Wells, 21 Fla. 280; State ex rel. Dickson v. Williams, 6 S. D. 119, 60 N. W. 410. In the cases of State v. Haberle, 72 Iowa 138, 33 N. W. 461, and Hartz v. Truckenmiller, 228 Iowa 819, 293 N. W. 568, ''when'' was construed to mean ''if.''

It seems to us that the proper interpretation to be given the word ''whenever'' in section 8613.3 is that it refers to the showing necessary to be made in order to entitle a claimant to a refund. Certainly it would not be logical to hold that in such cases there would be no time limit whatever—five, ten, or fifty years. Had the legislature intended that no limit be placed upon time to claim refund, it seems reasonable to believe that they

would have used different language from that expressed. Suppose that section 8613.3 had started out with the adverb "if," or "as soon as," or "in the event," could there be much question as to what the legislature intended or what was meant? It seems to us that the statute, beginning by the use of the word "whenever," contemplated that under certain conditions shown to exist concerning the claimed refund of taxes paid was not an exception such as was contemplated by subsection 5, section 11007 of the Code, as being within the designation of that part of that paragraph, "* * * and all other actions not otherwise provided for in this respect * * *." Here under the present record the sums paid, the dates thereof, the purposes for which paid, the basis of such payments, the appellant's legal rights thereto, were not in dispute and were fixed and certain. Such conditions meet the situation as contemplated by the use of the term "whenever" in said statute. To permit a construction to be placed upon the term such as contended for by appellant would be unreasonable and clearly at odds with sound judicial procedure. Neither logic nor sound reasoning would dictate giving a claimant for refund an unlimited time in which to prosecute his claim.

■ V. As heretofore stated, appellees contended that appellant's claim to a refund herein will not lie. Earlier in this opinion we have held adversely to this claim. We further hold adversely to appellant's claim that under section 8613.3 there was no time limit to its action to compel a refund. This holding disposes of two of the questions raised on this appeal.

There further remains for consideration the claim of appellees that appellant's right to refund, if permitted, is now barred by the statute of limitations, to wit, subsection 4, section 11007. If such contention is good, then appellant can have no refund, as more than three years have elapsed since said taxes were paid. Following a study of that part of said section 11007, we hold that said subsection 4 does not apply under the record in this case.

Both parties have argued this point and have cited authorities in so doing. The appellant states that there is considerable uncertainty and confusion in the Iowa decisions as to whether the three-year statute or the five-year statute is applicable to a suit to refund ordinary taxes. Appellant makes the statement that the

only cases decided are cases arising under the statute, Code section 7235, authorizing the board of supervisors to make a refund of ordinary taxes, and in none of these cases was there a direct issue as to whether the three-year statute or the five-year statute applied. This statement of appellant is not controverted. We have examined the cases cited by both appellant and appellees on that point and feel that there is merit to appellant's statement. The case of Crawford County Tr. & Sav. Bk. v. Crawford County, 8 Cir., Iowa, 66 F. 2d 971, 975 [certiorari denied 291 U. S. 664, 54 S. Ct. 439, 78 L. Ed. 1055], was before the United States Circuit Court of Appeals. The question as to which statute, the three- or five-year one, was involved. Therein that court, after reviewing the Iowa cases, said:

"This apparent confusion is doubtless caused by the fact that in no one of these cases was the direct issue of the three or five year period presented. In this uncertainty in the state decisions, we are unable to determine what rule, if any, is to be deduced from them."

Subsection 4, section 11007, is as follows:

"4. Against sheriff or other public officer. Those against a sheriff or other public officer, growing out of a liability incurred by the doing of an act in an official capacity or by the omission of an official duty, including the nonpayment of money collected on execution, within three years, provided that actions against a sheriff, deputy sheriff or other peace officer founded on false arrest shall be brought within six months after the exoneration or discharge of the person arrested."

While the action herein named the Commissioner of Insurance as defendant, there were other state officials named as defendants, to wit, Treasurer of the State of Iowa, Comptroller of the State of Iowa. At the time the cause was brought, Charles R. Fischer was the Insurance Commissioner. He did not hold that office when most of the taxes were paid by the appellant. This case is in no sense an action for personal liability against any of the appellees. There is no charge sounding in tort against the Insurance Commissioner. The claim is that the insurance premiums were paid into the office of the

Insurance Commissioner and that such official refused to refund the same. There could be no personal liability on the part of such official in receiving the taxes paid or refusing the refund. Said subsection 4, section 11007 seems to contemplate actions brought by persons aggrieved and growing out of the doing of acts in an official capacity or by the omission of an official duty. We do not see wherein the Commissioner violated an official duty under the record herein. He simply accepted the taxes as sent in. In refusing a refund, at most he simply violated a private right.

We have not been able to find any Iowa decision directly bearing upon an action against a state official where the matter of subsection 4, section 11007 was involved. We have gone over the cases cited by appellees. We do not find that they have direct application to the record in this case. We have found cases wherein it was held that the three-year statute applied where liability for failure to perform an official duty was charged against a county officer. Lougee v. Reed, 133 Iowa 48, 110 N. W. 165. Baie v. Rook, 223 Iowa 845, 273 N. W. 902, 110 A. L. R. 1062, was an action against a county recorder for negligence in indexing a chattel mortgage. In these two cases the three-year statute would apply.

State and county officials have short terms and are required to give official bonds. It is reasonable to assume that actions for personal liability for claimed official misconduct should be brought against them within a reasonable time so that they can know what their liability is and their bondsman be also advised. In this case there is no claim for personal liability against any of the appellees. Appellant asks for a refund and that same be applied upon future insurance-premium taxes. The statute, section 8613.3, is simply a refund statute: "* * * by applying the amounts thereof [excess payments] toward the payment of taxes, fines, penalties, or license fees already due or which may hereafter become due, until such excess payments have been fully refunded."

The early case of Callanan v. County of Madison, 45 Iowa 561, was a case brought to compel a refund of taxes where it was later found that the taxes were illegal or erroneous. This court in that case held that the five-year statute applied. As to when

the cause of action accrued was likewise involved in that case. However, the statute under which the recovery was sought did not fix the time when the action was to be brought and the court ruled, as above stated, that the five-year statute applied.

It is our conclusion that in the present case the five-year statute rather than the three-year statute applies. This was the holding of the lower court and in so holding that court did not err. Appellees have called attention to other statutory provisions which they claim are adverse to appellant's claim. They cite section 84.13, Code of 1939, relating to allowance of claims by the Comptroller; also section 84-e13, Code of 1935, relating to the same matter; and further, section 393, Code of 1931, relating to payment of claims against the state.

We do not think that the statutes above cited can have application here. Here the State Comptroller and the Treasurer were parties to the suit; they appeared by counsel and are bound by the decree. Neither of these officers is in a position to claim the right to disregard the order of the court.

In the case of any uncertainty in our decisions as to whether in cases for tax refunds the three-year or the five-year statute of limitations should apply, we feel that the longer period should apply. We find authority for such a holding in various jurisdictions: St. Louis, I. M. & S. Ry. v. Sweet, 63 Ark. 563, 40 S. W. 463; Crum v. Johnson, 3 Neb. 826, 92 N. W. 1054; Alexander v. Overton, 22 Neb. 227, 34 N. W. 629; Adelbert College v. Toledo W. & W. Ry. Co., 13 Ohio Cir. Ct. Rep. 590; Multnomah County v. Kelly, 37 Or. 1, 60 P. 202. See, also, Matthys v. Donelson, 179 Iowa 1111, 160 N. W. 944.

It is our conclusion that the decree and judgment of the lower court is correct and that the cause should be and is affirmed.—Affirmed.

All JUSTICES concur.