34944. J. W. MEADORS & COMPANY *et al. v.* STATE OF GEORGIA *et al.*

DECIDED JANUARY 30, 1954.

584

*E. S. Sell, Jr., Miller, Miller & Miller,* for plaintiff in error.

*Eugene Cook, Attorney-General, Geo. E. Sims, Jr., Assistant Attorney-General,* contra.

FELTON, C. J. The trial court correctly construed the Georgia Retailers' and Consumers' Sales and Use Tax Act (Ga. L. 1951, p. 360), correctly applied it to the facts in this case, and properly sustained the demurrer to the petition for a refund of the sales and use taxes paid under protest, for the following reasons:

1. The taxes here involved are not taxes on property and the transactions are not exempt from taxation under Code (Ann.) § 2-5404 and Code (Ann. Supp.) § 92-201.

2. Under the facts alleged, the contractor was an independent contractor, and under these facts the contractor cannot reasonably be said to have made a resale to the City of Macon of the tangible personal property as such. The contractor was compensated for a completed installation, and we surmise that the contract only separated the values of the personal property used from the other items of expense involved, because of the contention of the city that no sales taxes could be charged for the items since the city would ultimately acquire the property. "A contractor when fabricating personalty into realty neither sells, resells, sells at retail, nor can he be considered a retailer." *Duhame v.* State Tax Commissioner, 65 Ariz. 268 (179 Pac. 2d 252) ; *Acorn Iron Works v.* State Board of Tax Administration, 295 Mich. 143 (294 N. W. 126, 139 A. L. R. 368) ; *City of St. Louis v.* Smith, 342 Mo. 317 (114 S. W. 2d 1017) ; Wood Preserving

Corp. v. State Tax Commission, 235 Ala. 438 (179 So. 254); State Board of Equalization v. Stanolind Oil & Gas. Co., 54 Wyo. 521 (94 Pac. 2d 147); Atlas Supply Co. v. Maxwell, 212 N. C. 624 (194 S. E. 117); Albuquerque Lumber Co. v. Bureau of Revenue, 42 N. M. 58 (75 Pac. 2d 334); Utah Concrete Products Corp. v. State Tax Comm., 101 Utah 513 (125 Pac. 2d 408); State v. Christhilf, 170 Md. 586 (185 Atl. 456); State v. J. Watts Kearny & Sons, 181 La. 554 (160 So. 77); Blome Co. v. Ames, 365 Ill. 456 (6 N. E. 2d 841); Herlihy Mid-Continent Co. v. Nudelman, 367 Ill. 600 (12 N. E. 2d 638, 115 A. L. R. 485); 139 A. L. R. 373. "A contractor who buys building material is not one who buys and sells—a trader. He is not a 'dealer', or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber. . . Sales to contractors are sales to consumers . . ." State v. J. Watts Kearny & Sons, supra. See also Volk v. Evatt, 142 Ohio 335 (52 N. E. 2d 338); Craftsman Painters & Decorators v. Carpenter, 111 Colo. 1 (137 Pac. 2d 414); Townsend Electric Company v. Evans, 193 Tenn. 536 (246 S. W. 2d 967). There are authorities to the contrary, but we think that the above express the correct reasoning and conclusion.

3. As to the property bought within the State the contractor was the "consumer," and as to property bought without the State the contractor was the "user," within the meaning of the act. In the context the words "user" and "consumer" are synonymous. To construe either word to mean that the sale of property which must be consumed or destroyed in the use to be taxable would virtually annihilate the act and give it a strained and unthought-of meaning. Such construction would immediately exclude diamond rings, other luxuries, and other things not destroyed or consumed immediately in the use, from the realm of liability for sales and use taxes. It seems idle to belabor this question, but even under the narrow definition, the personal property used by the contractor was consumed and used up as personal property. In addition to defining "consume" to mean "to destroy," "to use up" and "to expend," Webster's New International Dictionary gives the following definitions: "consumer. 1. One that consumes. 2. Economics. One who uses (economic) goods and so diminishes or destroys their utilities;

opposed to *producer*." "Consumption . . . 2. *Economics*. The use of (economic) goods resulting in the diminution or destruction of their utilities;—opposed to *production*. *Consumption* may consist in the active use of goods in such a manner as to accomplish their direct and immediate destruction, as in eating food, wearing clothes, or burning fuel; or it may consist in the mere keeping, and enjoying the presence or prospect of, a thing, which is destroyed only by the gradual processes of natural decay, as in the maintenance of a picture gallery." "Generally, it may be said that *consumption* means using things, and *production* means adapting them for use. J. S. Nicholson." In the case of Alabama *v.* King & Boozer, 314 U. S. 1 (62 Sup. Ct. 43, 86 L. ed. 3), the court said: "As the sale of the lumber by King and Boozer was not for cash, the precise question is whether the Government became obligated to pay for the lumber and so was the purchaser whom the statute taxes, but for the claimed immunity. By the cost-plus contract the contractors undertook to 'furnish the labor, materials, tools, machinery, equipment, facilities, supplies not furnished by the Government, and services, and to do all things necessary for the completion of' the specified work. In consideration of this the Government undertook to pay a fixed fee to the contractors and to reimburse them for specified expenses including their expenditures for all supplies and materials and 'state or local taxes . . . which the contractor may be required on account of his contract to pay.' The contract provided that the title to all materials and supplies for which the contractors were 'entitled to be reimbursed' should vest in the Government 'upon delivery at the site of the work or at an approved storage site and upon inspection and acceptance in writing by the Contracting Officer.' The Government reserved the right to furnish any and all materials necessary for completion of the work, to pay freight charges directly to common carriers and 'to pay directly to the persons concerned all sums due from the Contractor for labor, materials or other charges.' Upon termination of the contract by the Government it undertook to 'assume and become liable for all obligations . . . that the Contractor may have theretofore in good faith undertaken or incurred in connection with said work and in accordance with the provisions of this contract.' . . We think, as the Supreme

Court of Alabama held, that the legal effect of the transaction which we have detailed was to obligate the contractors to pay for the lumber. The lumber was sold and delivered on the order of the contractors which stipulated that the Government should not be bound to pay for it. It was in fact paid for by the contractors who were reimbursed by the Government pursuant to their contract with it. The contractors were thus purchasers of the lumber within the meaning of the taxing statute, and as such were subject to the tax. . . The Government, to support its thesis that it was the purchaser, insists that title to the lumber passed to the Government on shipment by the seller, and points to the very extensive control by the Government over all purchases made by the contractors. It emphasizes the fact that the contract reserves to Government officers the decision of whether to buy and what to buy; that purchases of materials of $500 or over could be made by the contractors only when approved in advance by the contracting officer; . . . But, however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit. . . They were not relieved of the liability to pay the tax either because the contractors in a loose and general sense were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors." See also Utah Concrete Products Corp. v. State Tax Commissioner and St. Louis v. Smith, supra.

4. Section 3 (c) 2 (d) of the act of 1951 (Ga. L. 1951, pp. 360, 366) did not exempt the contractor from the tax (that provision provides that the terms "retail sale" and "sale at retail" shall also not include the following: "Sales which a State would be without power to tax under the limitations of the Constitution of the State or the United States, together with sales to the State of Georgia, any county or municipality of said State."), because the contractor was the user and consumer for the purposes of the contract with the city and did not resell the tangible personal

property to the city, as shown above. The argument that the transactions should have been exempt for the reason that, if the city had itself purchased the tangible personal property and had done the work with its own forces, it would have been exempt from the tax, is unsound. It is what happened and not what might have happened that determines legal consequences in a case such as this. In the first place, this argument eliminates the premise that renders the sales to the contractor taxable, and that is its contract for a composite installation. The manner of handling a transaction can determine which of two parties will under the law be the user or consumer. If a man constructs his own house, his purchases of the tangible personal property to be used makes him the user or consumer. If he lets a contract for its construction to a contractor, the contractor becomes the user and consumer. In this illustration the State would get the same tax either way, assuming that the retail prices were the same. In the instant case, the fact that in the first case in this illustration the city would be exempt under the law could not affect the second case in the illustration, because the legal consequences are different by reason of the method of handling the transaction. This court has no choice but to treat with the legal consequences demanded by the facts as the parties made them. If relief for municipalities is desirable under the circumstances, the legislature is the body created to provide it. For this court to do so would require such a construction of the act as would amount to a new section on exemptions, as we see it.

The court did not err in sustaining the general demurrer to the petition for refund and in dismissing the action.

*Judgment affirmed. Quillian and Nichols, JJ., concur.*