**KETCHIKAN SPRUCE MILLS, a corporation, Plaintiff, v. K. F. DEWEY, Tax Commissioner of the Territory of Alaska, Defendant.**

No. 7548-A.

District Court, Alaska. First Division, Juneau.
July 17, 1957.

338 <span style="background:black"></span>

John H. Dimond, of Faulkner, Banfield & Boochever, Juneau, for plaintiff.

J. Gerald Williams, Atty. Gen., David J. Pree, Asst. Atty. Gen., Territory of Alaska, for defendant.

KELLY, District Judge.

The plaintiff in this action, a corporation engaged in the business of manufacturing and selling lumber products, seeks to recover $10,158.96 as a partial refund of taxes paid to the Territory for the years 1950 through 1954, under the terms of the Alaska Business License Act, Ch. 43, SLA 1949, as amended. Prior to the proceedings in this court, the plaintiff had made an unsuccessful application to the Tax Commissioner for the payments which it contends should be returned, and had then petitioned for a hearing,

as provided in Section 6(b) of the Act. The hearing was conducted, and a ruling adverse to the plaintiff was rendered on September 7, 1956, by the Deputy Tax Commissioner, R. D. Stevenson, upon which the plaintiff appealed to this court in accordance with the provisions of Section 7 of the Act.

A stipulation entered into between the parties indicates that during the years in question the plaintiff made sales of lumber to various purchasers, including wholesale dealers; manufacturers of certain wood products; the United States Army; and in one instance, to a Mr. Takahashi, a Seattle exporter, who subsequently shipped the lumber to Japan for "further remanufacture."

Under the terms of the Act an initial fee of $25 is required of all licensees, and in addition, a sum equal to one-half of one percent of the gross receipts in excess of $20,000 and not more than $100,000, and one-fourth of one percent of the gross receipts in excess of $100,000. The determination of this case rests upon the interpretation to be given to Section 2(d), defining "gross receipts." They include generally all receipts from sources within the Territory, whether in the form of money, credits or other valuable consideration, received from engaging in or conducting a business, but are subject to the following exceptions:

"These general provisions for computing gross receipts are hereby modified as follows: Resident wholesale firms registered in Alaska as domestic corporations or otherwise identifiable as wholesalers who are residents, need not include the receipts from sales of finished products to dealers for resale to consumers upon which resale the tax levied hereunder applies, nor need the receipts from sales by manufacturers of their products manufactured in Alaska, except where such prod-

ucts are sold direct to the consumer, be included,
nor need the receipts from any sale made to any
person in a foreign country for shipment out of
the United States be included unless exported in
bond for re-entry into the United States."

Plaintiff contends that certain sales which it made between 1950 and 1954 were exempt from taxation by virtue of the second and third exceptions to a licensee's "gross receipts," as set forth above. The Territory claims that to avail himself of the exception, a taxpayer must be a manufacturer and a wholesaler, and the sales to be excepted from gross receipts must be sales of finished products. It further contends that even if the statute is construed adversely to its position, the plaintiff nevertheless cannot prevail because the taxes were paid voluntarily under a mistake of law.

■ In support of the construction which is urged by the Territory, it is pointed out that the clause relating to manufacturers cannot stand alone as an independent sentence. This clause reads:

"nor need the receipts from sales by manufacturers of their products manufactured in Alaska,
except where such products are sold direct to the
consumer, be included * * *."

Therefore, it is argued, this clause is dependent upon the preceding clause, and is subject to all the limitations contained in it, namely, that the manufacturer must also be a resident wholesale firm registered in Alaska as a domestic corporation or otherwise identifiable as a wholesaler who is a resident, and who sells finished products to dealers for resale to consumers, upon which resale the tax applies. I am compelled to disagree with this interpretation. The wording of the clause in question could readily be altered to make it constitute a separate sentence, and the exception

which it specifies is no less complete and independent because of its grammatical dependence on the preceding part of the sentence. This interpretation is supported by an amendment to the Business License Tax, Ch. 172, SLA 1957, which reads in part:

"Sec. 3. Exemptions.

"(a) The following gross receipts shall be exempt from tax hereunder:

\* \* \* \* \* \* \* \*

"(5) Gross receipts of resident wholesale firms registered in Alaska as domestic corporations, or otherwise identifiable as wholesalers who are residents, which are derived from sales of finished products to dealers for resale to consumers upon which resale the tax levied hereunder applies.

"(6) Gross receipts derived from any sale made to any person in a foreign country for shipment out of the United States, except where the goods or products sold are exported in bond for re-entry into the United States.

"(7) Gross receipts of manufacturers or processors derived from sales of their products manufactured or processed in Alaska, except where such products are sold directly to the consumer."

If there was any doubt that the exceptions listed originally in Sec. 2(d) were intended by the legislature to be separate and distinct, it has been removed by the amendment.

 The Territory further points out that products sold to consumers are necessarily finished products. This statement is possibly too broad, because the term "consumer" is susceptible of more than one meaning, but, as will be shown later, it is correct as far as this case is concerned. Products sold to consumers being finished prod-

ucts, the defendant correctly observes that "such products" in the clause "except where such products are sold direct to the consumer" means finished products. Applying the rule that qualifying or limiting words or clauses are to be referred to the immediately preceding antecedent, as found in Dunn v. Bryan, 1931, 77 Utah 604, 299 P. 253, the defendant concludes that "their products manufactured in Alaska" in the preceding clause is necessarily restricted to finished products. This contention must also be rejected. Any reference of "such products" to the foregoing words "their products manufactured in Alaska" must be merely for the purpose of identification. Finished products are but a part of "products manufactured in Alaska," and it is patently illogical to say that what is true with regard to a part is necessarily true with regard to the whole.

The Territory further relies upon the interpretation given to these exceptions by the Department of Taxation under its rule 2B(1):

"(1) Resident wholesale firms, registered in Alaska as Domestic Corporations or otherwise identified as Wholesalers, who are residents and manufacturers, may deduct from gross receipts the receipts from sales of finished products to dealers for resale to consumers upon which resale the license levy hereunder applies . . ."

Administrative interpretations are accorded consideration and given weight, but the final construction of a statute rests with the courts. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 330, 59 S.Ct. 191, 83 L.Ed. 195; Ada County v. Oregon Short Line R. Co., 9 Cir., 1938, 97 F.2d 666; Folsum v. Pearsall, 9 Cir., 1957, 245 F.2d 562.

In this instance, I am constrained to hold that the three exceptions listed in 2(d) are separate and dis-

tinct, and that they do not limit or qualify each other in any way. In that respect, the interpretation of the Department of Taxation was erroneous.

The vital question with regard to most of the sales claimed to be exempt by the plaintiff, is the meaning to be given to the word "consumer." Its use in some statutes has been construed to mean the person who finally exhausts the usefulness of goods. Boyer-Campbell Co. v. Fry, 1935, 271 Mich. 282, 260 N.W. 165, 98 A.L.R. 827; Revzan v. Nudelman, 1938, 370 Ill. 180, 18 N.E.2d 219. Under other statutes it has been applied to the manufacturers who process, shape, or in some way alter raw material during the course of producing a finished product. State v. J. Watts Kearny & Sons, 1934, 181 La. 554, 160 So. 77; Bedford v. Colorado Fuel & Iron Corporation, 1938, 102 Colo. 538, 81 P.2d 752; Craftsman Painters & Decorators, Inc., v. Carpenter, 1942, 111 Colo. 1, 137 P. 2d 414; Volk v. Evatt, 1943, 142 Ohio St. 335, 52 N.E. 2d 338; Townsend Electric Co. v. Evans, 1952, 193 Tenn. 536, 246 S.W.2d 967; J. W. Meadors & Co. v. State, 1954, 89 Ga.App. 583, 80 S.E.2d 86.

In Volk v. Evatt, supra, for example, a person engaged in manufacturing heating units was held to be a consumer of the materials which went into each unit. In the first instance, then, the final product and its constituents are consumed but once, while under the latter interpretation, the material may be "consumed" a number of times before the final end is achieved. As applied to the Alaska Business License Tax, one interpretation would require the inclusion as gross receipts of only the proceeds of the final sale of a finished product, while the other would extend the tax to proceeds of a sale from one manufacturer to another of material which will become a part of the final product. More concretely, the second interpretation would

require the plaintiff in this case to include as gross receipts those sales of lumber to customers who "consume" it by manufacturing doors, ladders, musical instruments, etc.

A consumer is defined by Webster's New International Dictionary as "one who uses (economic) goods and so diminishes or destroys their utilities;—opposed to producer." Under this definition only the final purchaser of the product could be considered a consumer. The 1957 Territorial Legislature adopted the substance of this definition in Ch. 172, SLA 1957, supra. Sec. 3(b) states that:

> "The word 'consumer' as used in this Sec. 3
> shall mean the person who, in the ordinary com-
> mon meaning of the term, ultimately uses goods,
> and so diminishes or destroys their utilities as
> long as they last or until such person desires to do
> away with them."

The 1957 amendment is not controlling in the present case, of course, and if "consumer" had a different meaning previously, that meaning should be applied to the transactions in question. However, the 1957 amendment is entirely compatible with the sections which it amended. There is no indication that the tax was meant to be given a broader or a more limited application, or to be altered in any way. Rather, the content of the amendment strongly suggests that the purpose was simply to clarify the 1949 Act, and to make it more accurately represent the intent of the legislature. Viewing the amendment as merely a clarification, it lends support to the interpretation of "consumer" by the Alaska Development Board, an official Territorial agency, at the time the act was passed. Plans were then being formulated for the construction of the Ketchikan Pulp Mill, and Mr. Lawson Turcotte, Executive Vice President of the Puget Sound Pulp & Timber Company in Bellingham, Washington, corresponded with Mr. George Sund-

borg, consultant of the Development Board, concerning the scope of the new Business License Tax. One of the principal purchasers of pulp from the proposed mill was to be the American Viscose Corporation, a manufacturer of such products as rayon yarns. With specific reference to the manufacturers' exception in Sec. 2(d), Mr. Sundborg stated in a letter to Mr. Turcotte dated March 23, 1949:

> "The exemption was embraced in an amendment made in the Senate specifically to exempt our prospective pulp and paper manufacturers. You would report as gross receipts only such products as your corporation would sell in Alaska direct to the consumer. I assume that there would be no such products in connection with your proposed operation. If there should be some minor by-product which you would sell direct to the consumer in Alaska, receipts from same would have to be reported. Certainly your receipts from sale of pulp to the American Viscose Corporation would not have to be included."

I find that the legislature intended the word "consumer" to include only the final purchaser of the finished product.

The next question is whether the plaintiff may recover the taxes which it paid in excess of the amount legally due. The defendant states that "The general rule appears to be that taxes voluntarily paid under a mistake of law cannot be recovered," citing a number of cases in support thereof. That this is a correct statement of law goes without saying, but it does not conclude the present case. It is equally well settled that the legislature may enact additional remedies unknown at common law for the

recovery of illegal or excessive taxes. 51 Am.Jur. Taxation, Sec. 1179, p. 1012. 84 C.J.S. Taxation § 635, p. 1277. 3 Cooley, Law of Taxation, Sec. 1282, p. 2561. Commercial Nat. Bank of Council Bluffs v. Board of Sup'rs of Pottawattamie County, 1915, 168 Iowa 501, 150 N.W. 704; Lincoln Nat. Life Ins. Co. v. Fischer, 1945, 235 Iowa 506, 17 N.W.2d 273; F. M. Sibley Lumber Co. v. Department of Revenue, 1945, 311 Mich. 654, 19 N.W.2d 132; B—C Remedy Co. v. Unemployment Compensation Commission, 1946, 226 N.C. 52, 36 S.E.2d 733, 163 A.L.R. 773; District of Columbia v. McFall, 1951, 88 U.S.App. D.C. 217, 188 F.2d 991.

In my opinion, Sec. 6(c) of the Business License Act creates such an additional remedy. It provides:

> "If the Tax Commissioner determines that a fee in excess of the amount lawfully due has been paid, he shall allow a refund or permit a credit according to which of said two methods the taxpayer requests. If refund is allowed, same shall be made out of the General Fund pursuant to a voucher approved by the Tax Commissioner."

Thus a taxpayer is entitled to a refund upon the bare showing that he paid an amount in excess of the tax which was due. There is no requirement that the tax be paid under protest, or that any showing of duress must be made.

In the light of the statutory provision, proof that the payment was made voluntarily or under a mistake of law is no defense.

Having determined that a refund is authorized by Sec. 6(c) of the Act, it becomes unnecessary to consider the application of Sec. 48–7–1(b), A.C.L.A.1949, a general tax refund statute upon which plaintiff relies in the alternative.

██ The Territory has not pleaded the statute of limitations, but on page 7 of its brief it claims that "the appeal was not timely." It refers to Sec. 6(a), which provides that:

> "As soon as practicable after the final payment of the tax is made, the Tax Commissioner shall examine the return and determine the correct amount of the total tax * * *."

It is suggested that when the Tax Commissioner examined and approved each of the returns "as soon as practicable" after they were filed, any right to a refund which may have existed by virtue of Sec. 6(c) was terminated. However, it does not appear that the refund provision was intended to apply only until the return was approved by the Commissioner, since Sec. 6(b) states that:

> "*At any time* when it appears that agreement cannot be reached with the taxpayer as to the correct amount of the license tax involved, the Tax Commissioner may set a time and place of hearing upon the question * * *." (Emphasis supplied.)

While it is doubtful that the above provision would extend any rights to the taxpayer beyond the time specified in the applicable statute of limitations, it does seem to indicate an intention to allow the taxpayer to raise the question of an overpayment of taxes even after the return has been approved by the Commissioner.

██ An examination of the stipulation of facts discloses that the sales enumerated in sections (a) through (j) of paragraph 3 need not have been•included as gross receipts for the reason that they were "sales by manufacturers of their products manufactured in Alaska," and they were not sales "direct to the consumer." The sale of lumber for shipment to Japan listed in section (h) was

excludable for the additional reason that it was a sale for shipment to a foreign country, and not in bond for re-entry into the United States. Likewise, the third exception of 2(d) applies to section (k), the sales of lumber to the United States Engineers for shipment to Japan and Korea. The facts recited in sections (m) through (p) of the stipulation do not establish whether or not the purchasers involved were "consumers" but the testimony of E. W. Boogen, manager of the Ketchikan Spruce Mill's wholesale sales department, satisfies the Court that they were not, and that therefore the receipts from these sales are not includable as gross receipts. The total amount of the sales which were excludable is $3,849,048.23, and the plaintiff is entitled to a refund for the taxes which were paid upon that sum.

■ The plaintiff contends that section (1), the sales to the Army and Air Force for the construction of installations in Alaska, should be excluded from gross receipts because: (1) they were sales at a "manufacturer's price" and cannot be considered sales at retail; and (2) their inclusion as gross receipts would violate the immunity of the federal government from state taxation.

Assuming that the first argument is true, the purchasers are nevertheless the final users and consumers of the lumber. These sales may not be excluded from gross receipts unless the plaintiff's second contention would compel that conclusion.

On the question of the tax being a violation of sovereign immunity, reliance is placed upon the case of Kern-Limerick, Inc., v. Scurlock, 1954, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546. In that case a joint venture, identified as W H M S, contracted to build an ammunition depot for the Navy. By the terms of the contract it was to act as an agent for the Navy, the latter taking immediate title

to any goods purchased for the project. When Arkansas sought to impose a 2% tax, under its Gross Receipts Tax Law, upon the purchase of two tractors by W H M S, the Supreme Court held the tax unconstitutional as applied to those transactions. The plaintiff asks that a like conclusion be drawn here. However, there are fundamental differences between the Arkansas case and the present case. The Supreme Court of Arkansas held in Cook v. Southeast Arkansas Transportation Co., 211 Ark. 831, 202 S.W.2d 772, that the Gross Receipts Tax Law was a sales tax despite the fact that it is not apparent from the title. In addition, the Arkansas Act itself provides that the seller shall collect the tax from the purchaser, a provision not found in the Business License Tax. The Supreme Court therefore found that in the Kern-Limerick case the legal incidence of the tax was not upon the seller, but the buyer, which by reason of the agency relationship was the United States itself.

 The plaintiff admits the differences between the two statutes, but contends that the result is the same, and that the burden of the Alaska statute would be equally abhorrent to federal immunity. However, the economic burden alone will not vitiate a tax as applied to the federal government. Form—not substance—is the controlling element under the "legal incidence" test established in James v. Dravo Contracting Co., 1937, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 and State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3. The test was not altered in the Kern-Limerick case, although the result differed because of the changed factual situation. The legal incidence of the tax in the earlier cases was found to be upon the independent contractors who were doing work for the federal government, and although the economic burden of the tax was eventually passed on to the

government, the tax was sustained in each case. In the Kern-Limerick case, however, W H M S was not an independent contractor, but an agent for the government, and thus the legal incidence of the tax was upon the United States. The court stated in 347 U.S. at page 122, 74 S.Ct. at page 410:

> "We find that the purchaser under this contract was the United States. Thus, King & Boozer is not controlling for, though the government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States."

In the present case the legal incidence of the Business License Tax is upon the Ketchikan Spruce Mill, and sales to the United States are not excludable from gross receipts because of federal immunity from state taxation. See: Federal Reserve Bank of Chicago v. Department of Revenue, 1954, 339 Mich. 587, 64 N.W.2d 639; Arizona State Tax Commission v. Garrett Corporation, 1955, 79 Ariz. 389, 291 P.2d 208; Sales and Use Taxes as Affected by Federal Government Immunity, 9 Vanderbilt L.Rev. 204 (1956).

██ ██ On the question of interest, equitable motives have led the majority of courts to recognize tax refunds as an exception to the general rule that interest does not run against a sovereign in the absence of an express statute creating such liability. The Ninth Circuit Court of Appeals has aligned itself with these authorities in the case of Mullaney v. Hess, 9 Cir., 1951, 13 Alaska 276, 189 F. 2d 417, suggesting that interest might be allowed in response to "considerations of fairness." I feel that interest should be allowed; however, the Territory should not be penalized by the lack of promptness on the part of the

claimant in presenting the claim. Interest at the legal rate will be allowed from the date the claim was presented.

■ The rule prevails, however, that costs may not be assessed against a sovereign without statutory authority therefor. 14 Am.Jur., Costs, Sec. 34, p. 22; Chastain's, Inc., v. State Tax Commission, 1952, 72 Idaho 344, 241 P.2d 167; State ex rel. Carroll v. Gatter, 1953, 43 Wash. 2d 153, 260 P.2d 360; State ex rel. Ervin v. Colonial Acceptance, Inc., Fla.1955, 80 So.2d 681.

Accordingly, plaintiff's claim for costs is denied.

Findings of fact and conclusions of law in accordance with this opinion may be submitted, either by stipulation or upon notice for hearing. They should include the exact amount of the refund to which the plaintiff is entitled. Thereafter, judgment may be entered in accordance herewith.