## 48205. L. M. BERRY & COMPANY v. BLACKMON.

ARGUED MAY 4, 1973 — DECIDED JUNE 15, 1973 — REHEARING
DENIED JULY 6, 1973 —

*Walter H. Wingfield, Carey P. DeDeyn,* for appellant.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, Timothy J. Sweeney, Assistant Attorneys General,* for appellee.

STOLZ, Judge. The issue raised by this taxpayer's appeal from the affirmance of an assessment by the State Revenue Commissioner, is whether purchases for the purpose of resale, within the meaning of the Retailers' and Consumers' Sales and Use Tax Act (Ga. L. 1951, p. 360, as amended; Code Ann. Ch. 92-34A), occurred when the non-resident taxpayer purchased telephone directories from non-resident printers for delivery by the printers within this state pursuant to the taxpayer's contracts with certain telephone companies in Georgia.

The taxpayer, Berry, is engaged in the business of procuring by solicitation, advertising for the classified sections of telephone directories of telephone companies. Its contracts with the telephone companies are of two types. Under the "publication contract," Berry had the exclusive right and obligation to print and publish the directories and pay all bills therefor, making no separate charge for the printing. Under the "commission contract," no express provision governed Berry's duties with respect to the printing of the directories. The evidence was conflicting as to whether Berry considered itself impliedly bound under all commission contracts to obtain directories or whether this was a matter to be negotiated in each transaction. In any event, Berry re-invoiced all or part of its printing costs to the telephone companies under the commission contracts, but absorbed the entire cost under some of the other contracts. In no instance did the printer bill a telephone company for the sales price of the directories.

In procuring the production of the directories, Berry dealt exclusively and directly with the printers under a master contract, specific provisions of which referred to Berry as the purchaser, and provided when title passed to Berry, when Berry was to be billed, and when Berry was to make payment. There was no reference to

Berry as the agent or broker of any other party in its contracts with the printers, or in the purchase orders or invoices for the printing. The directories were shipped by the printers on Berry's instructions either directly to the subscribers of the telephone company or to the company, which then redistributed them to its subscribers. The telephone companies' use of the directories is governed by tariffs filed with and approved by the Georgia Public Service Commission and introduced in evidence.

1. The trial court correctly determined that the taxpayer did not act as the broker of the telephone companies in purchasing the directories. A broker's contracts are always made as agent for and in the name of his employer. *American Sugar Refining Co. v. McGhee,* 96 Ga. 27, 38 (21 SE 383); *Payne v. Ponder,* 139 Ga. 283, 286 (77 SE 32). The purchaser is "the person who orders and pays for [goods] when the sale is for cash or who is legally obligated to pay for them if the sale is on credit." Alabama v. King & Boozer, 314 U. S. 1, 10 (62 SC 43, 86 LE 3, 140 ALR 615). See also *State of Ga. v. Coca-Cola Bottling Co.,* 93 Ga. App. 609 (92 SE2d 548), rev. 212 Ga. 630 (94 SE2d 708). The present taxpayer's contract was made in its own name, and the evidence hereinabove set out authorizes the finding that the taxpayer failed to carry its burden of showing the existence of any agency relationship, either by express contract or otherwise. See *Blackmon v. Ross,* 123 Ga. App. 89 (179 SE2d 548).

2. A purchase of tangible personal property to be transferred to another in the course of providing a service, is a taxable retail transaction, even though the actual consumption of the item is made by the recipient of the service or by the recipient's customer, and even though the transfer incident to the service transaction is not a taxable sale under § 92-3403a C (2) (a) (Ga. L. 1951, pp. 360, 363, as amended). *Craig-Tourial Leather Co. v. Reynolds,* 87 Ga. App. 360 (73 SE2d 749); *J. W. Meadors & Co. v. State of Ga.,* 89 Ga. App. 583 (80 SE2d 86); *Troup Roofing Co. v. Dealers Supply Co.,* 91 Ga. App. 880 (5) (87 SE2d 358); *Superior Type, Inc. v. Williams,* 98 Ga. App. 89 (105 SE2d 14); *Macon Machine Shop v. Hawes,* 118 Ga. App. 280, 283 (163 SE2d 440); *Atlanta Americana Motor Hotel Corp. v. Undercofler,* 222 Ga. 295 (149 SE2d 691).

3. The taxpayer is not relieved of liability by the fact that its purchases of the directories were made outside of this state. See Code Ann. § 92-3448a (Ga. L. 1955, p. 389); Code Ann. § 92-3402a (b) (Ga. L. 1951, pp. 360, 362, as amended); Code Ann. § 92-3403a (I) (Ga. L. 1951, pp. 360, 363, as amended); *J. W. Meadors & Co. v.*

*State of Ga.,* 89 Ga. App. 583, supra; *Hawes v. Ingalls Iron Works Co.,* 117 Ga. App. 80 (159 SE2d 434). Under the above authorities, the taxpayer here is considered the "consumer." Nor is this result changed by the fact that the directories were shipped by the printers directly to the ultimate consumers, rather than by the taxpayer, since this delivery was done by the printer at the instance of and for the taxpayer in order for the latter to fulfill its contractual obligations or agreements to the telephone companies to deliver them within this state, which obligations or agreements were not necessarily contained in written provisions of the contracts. See Code Ann. § 109A-1—201 (3) (Ga. L. 1962, pp. 156, 161, as amended); Code Ann. § 109A-1—206 (Ga. L. 1962, pp. 156, 169); Code Ann. § 109A-2—201 (Ga. L. 1962, pp. 156, 176).

*Judgment affirmed. Eberhardt, P. J., and Pannell, J., concur.*