# Louisville & Nashville Railroad Co. v. Fulgham.

*Action against Common Carrier, to recover Overcharge.*

1. *Parol evidence varying bill of lading.*—A bill of lading, when executed and delivered, becomes the sole expositor of the terms of the contract between the parties, and its terms can not be varied by proof of a verbal agreement to allow or refund a rebate; but a modification of this principle gives effect to a general order published and posted by the carrier, allowing reduced rates for certain classes of freight to be used for particular purposes, directing the regular rates to be first paid, and promising to refund the overcharge on application.

2. *Reduced rates on freight used for industrial or manufacturing purposes.*—The statute allows railroad companies to give special reduced rates to any person or corporation "to aid in the development of any industrial enterprise in this State" (Code, § 1161); and a railroad company, in the exercise of this power, having published and posted notice of special rates for the transportation of coal "used exclusively for manufacturing purposes." a miller engaged in the business of making meal out of corn is entitled to claim the reduced rate on the coal used by him.

[Louisville & Nashville Railroad Co. v. Fulgham.]

APPEAL from the City Court of Decatur.
Tried before the Hon. W. H. SIMPSON.

BRICKELL & HARRIS, and J. C. EYSTER, for appellant.

WERT & SPEAKE, *contra.*

STONE, C. J.—This action was brought by the appellee
against the appellant, and sought to recover a sum of money ·
paid by plaintiff as an overcharge of freight for the transporta-
tion of coal from Warrior to Decatur. The complaint counted
for money had and received, and on an account stated.

It is shown by the bill of exceptions, that the bill of lading
recites, as the agreed rate of freight, the schedule rate of $1.40
per ton. That is the regular charge as found in the company's
published tariff of rates. On the arrival of the coal in Decatur,
the plaintiff paid the amount of freight due thereon at the
rate of $1.40 per ton. The plaintiff claims, and testified, that
he paid this amount under protest, and under an agreement
with an agent of the defendant that 80 cents of the charge
would be refunded to him, on his application to the general
freight office of said railroad company. This alleged agree-
ment to refund the overcharge was denied by the agent; and
he testified *that he* did not *promise* to pay the same, but said
he would send the claim to the general freight office of defen-
dant. It was also adduced in evidence that, during the
previous year, the plaintiff had shipped coal from Warrior to
Decatur, under a similar bill of lading, with the same stipu-
lated rate of freight; had paid the same freight charge as in
this case, and upon the presentation of this claim for rebate,
filed as in this instance, he had been refunded the amount of
the overcharge. ·

It was further shown that, by an order of the general freight
agent of the defendant, coal to be used for "manufacturing
purposes" should be shipped from Warrior to Decatur at the
rate of 60 cents per ton. This order was published, and
posted for public inspection in the defendant's office at Deca-
tur; and contained the following direction : "Bill the coal at
tariff rates, giving the figures. When information is received
at the general freight office, through the agent at Decatur,
that the coal was used exclusively for manufacturing purposes,
overcharge will be refunded."

1. In the transportation of freight, the bill of lading em-
bodies the contract between the shipper and the carrier, and
when delivered by the carrier and received by the shipper, its
terms, stipulations and conditions are as binding on the parties

[Louisville & Nashville Railroad Co. v. Fulgham.]

thereto as are the terms, stipulations and conditions of any other written contract. A bill of lading is, therefore, to be taken as the sole evidence of the final agreement of the parties, by which their duties and liabilities must be regulated; and parol evidence is inadmissible to vary its terms or legal import.—*Long v. N. Y. Cen. R. R. Co.*, 50 N. Y. 76; *Pemberton Co. v. N. Y. Cen. R. R. Co.*, 104 Mass. 144; *Hinckley v. N. Y. Cen. R. R. Co.*, 56 N. Y. 429.

According to the above principle, where a carrier verbaly agrees to give a rebate, and afterwards gives a bill of lading which contains no much provision, the promised rebate can not be recovered.—*Hopkins v. St. L. & San. Frans. Railway Co.*, 16 Amer. & Eng. Railway Cases, 126, note, and authorities cited. Whether or not under the statute—Code, § 1161—the promised rebate can be recovered when the agreement therefor is expressed in the bill of lading, we leave an open question, as the facts of this case do not make it necessary to decide the point.

An exception to the above stated rule, which effects a modification of the principle, is, where the bill of lading is executed and delivered, or the freight charges are paid as stipulated therein, and there has been published and posted for public inspection in the office of the carrier, where it could be seen by the shipper or consignee, an order of the carrier, allowing authorized special rates for certain classes of freight to be used for particular purposes, and directing the freight to be paid for at the regular tariff rates, and the overcharge will be refunded upon application. Such are the facts of the case we are now considering.

2. The Code of 1886, § 1161, requires that "Every person or corporation, owning or operating a railroad in this State, must publish, by posting at all the freight depots along the line of such road, the tariffs of rates for the transportation of freight thereon, showing the rates for each class, and including general and special rates; and from such tariffs no reduction shall be made in favor of any person which is not also made in favor of all other persons or corporations, by change in such published rates. Special rates, if so published, may be given to any person or corporation to aid in the development of any industrial enterprise in this State." Unless the claim of the plaintiff can find justification in the last sentence of this section, it can not be allowed.

The purpose of the exception in the statute, under which special rates are allowed, and the object to be accomplished thereby, as we conceive them, were the encouragement of manufactures, and the fostering of industrial enterprises, which

ever add materially to progress and permanent prosperity. Manufacture means, to make any thing by hand or artificial device. Hence, that the making of corn into meal is manufacturing, there can be no doubt. It can not be disputed that "industrial enterprises" include all kinds of manufacturing. Mr. Worcester defines industrial as "relating to manufactures, or to the product of industry or labor." It being in evidence that the plaintiff was a miller, and used the coal shipped to him in the manufacture of corn into meal, we are constrained to hold that the plaintiff had the right to rely on the promised rebate, and that the claim here made should be allowed. Under these views, the court did not err in its rulings on the evidence, and in rendering judgment for the plaintiff.

We decline to consider whether or not the agent of the defendant at Decatur, with whom the plaintiff dealt, had the authority to bind his principal. The views above expressed render the decision of this question unnecessary.

The judgment is affirmed.