## 34263. CRAIG-TOURIAL LEATHER CO. INC. *v.* REYNOLDS.

DECIDED DECEMBER 5, 1952—REHEARING DENIED DECEMBER 19, 1952.

*Jack H. Zinkow,* for plaintiff in error.

*Eugene Cook, Attorney-General, George E. Sims Jr., Assistant Attorney-General, M. H. Blackshear Jr.,* for the State as amicus curiae.

*Arnold S. Kaye,* contra.

Sutton, C. J. ■ Code (Ann. Supp.) § 92-8410 provides in part: "Before any suit, action, or other judicial proceeding for the enforcement of this Chapter or collection of State taxes shall be initiated, by any counsel other than a duly appointed Assistant Attorney-General or the Attorney-General himself, it shall be the duty of counsel (whether counsel shall be a county attorney or solicitor-general or other person) to file with the [Revenue] Commissioner a copy of the petition or other pleading together with a sworn statement of the facts on which the petition or other pleading is based; and no such suit, action, or other judicial proceeding shall be instituted until the same shall have been approved and authorized by the Revenue Commissioner." This provision was enacted in 1938. (Ga. L., Ex. Sess., 1937-38, p. 82.)

However, Secs. 4, 12 (a), and 12 (b) of the Georgia Retailers' and Consumers' Sales and Use Tax Act of 1951 provide as follows: "Every 'dealer' making sales, whether within or outside the State, of tangible personal property, for distribution, storage, use, or other consumption, in this State, shall at the time of making sales, collect the tax imposed by this Act from the purchaser." Ga. L. 1951, p. 369 (Code, Ann. Supp., § 92-3405a).

"The privilege tax herein levied, measured by retail sales shall be collected by the dealer from the purchaser or consumer.

Notwithstanding any other provision, it is the purpose and intent of this Act that the tax imposed hereunder is, in fact, a levy on the purchaser or consumer of the tangible personal property or services described in this Act, and the levy on dealers as specified is merely *as agent of the State for collection of said tax.* . . Such dealer shall collect the tax imposed hereunder from the purchaser or consumer and shall pay the same over to the State Revenue Commissioner as herein provided." Ga. L. 1951, p. 372 (Code, Ann. Supp., § 92-3414a).

"Dealers shall, as far as practicable, add the amounts of the tax imposed under this Act to the sales price or charge, which shall be a *debt* from the purchaser or consumer to the dealer, until paid, and shall be *recoverable at law in the same manner as other debts.* Any dealer who shall neglect, fail, or refuse to collect the tax herein provided, upon any, every, and all retail sales made by him, or his agents, or employees, of tangible personal property which is subject to the tax imposed by this Act, shall be liable for and pay the tax himself." Ga. L. 1951, p. 373 (Code, Ann. Supp., § 92-3415a). (Emphasis added in the above-quoted provisions.)

The State appeared as amicus curiae and argued the case in the court below and in this court, and, while contending that the suit could not be maintained without authorization from the Revenue Commissioner, also contends that the plaintiff is entitled, on the merits of the case, to recover the tax sued for from the defendant, and has adopted the statement of the case in the plaintiff in error's brief in this court. We are of the opinion that an action such as the present one may be maintained under the provisions of the Georgia Retailers' and Consumers' Sales and Use Tax Act of 1951, supra, without giving notice thereof under the provisions of Code (Ann. Supp.), § 92-8410, supra.

■ The question for determination is whether the sale by the plaintiff to the defendant of the goods which were to be used in repairing and mending shoes was a sale at retail, such as would require the plaintiff to collect from the defendant the 3% sales and use tax on the goods sold. Ordinarily, a retail sale is presumed, and "The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who

makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale." Ga. L. 1951, p. 370 (Code, Ann. Supp., § 92-3407a). "The certificate relieves the seller from the burden of proof only if taken in good faith from a person who is engaged in the business of selling tangible personal property and who holds the permit provided for in this Act and who, at the time of purchasing the tangible personal property, intends to sell it in the regular course of business or is unable to ascertain at the time of purchase whether the property will be sold or will be used for some other purpose." Ga. L. 1951, p. 370 (Code, Ann. Supp., § 92-3408a).

The act defines a retail sale as follows: " 'Retail sale' or a 'sale at retail' means: (1) a sale to a consumer or *to any person for any purpose* other than for resale in the form of tangible personal property. . ." Ga. L. 1951, p. 364 (Code, Ann. Supp., § 92-3403a (C) (1)). The defendant contends that the sale to him was not a retail sale, since he was not the actual consumer, but in effect sold the products to his customers. The above definition does not confine "retail sales" to sales made to consumers only; the chief element of the definition is that such a sale shall not be followed by a resale, or another retail sale, but shall be the last of a possible series of sales. "The terms 'retail sale' and 'sale at retail' shall also not include the following: (a) Professional, insurance, or personal service transactions which involve sales as inconsequential elements for which no separate charges are made nor services rendered by repair men for which a separate charge is made." Ga. L. 1951, p. 365 (Code, Ann. Supp., § 92-3403a (C) (2) (a)). Shoe repairs may reasonably be said to fall within the category of "personal service transactions," and it may be inferred from the stipulation of facts that the defendant shoe repairman does not make separate charges for the materials used and for the services rendered in making shoe repairs. The difficulty in applying this definition is in determining whether the sale of the materials used is an inconsequential element of the service transaction, or whether the service rendered is a part of the sale. We do not think that the actual cost or monetary value of the materials used is determinative. On such a basis, in the present case, it would follow that the price of the materials on the

average shoe-repair job, being 50% of the total price, would be a consequential element of the transaction, making it a retail sale. However, we think that the main consideration should be the purpose of the customer, who primarily wishes to buy the skilled services of the shoe repairman because such services cannot be performed by the customer himself because he lacks the equipment, time, or skill required. Under such circumstances, the sale of various grades or qualities of materials by the shoe repairman is really incidental to and but a means of rendering the services which his customers want.

If a shoe repairman, such as the defendant, should desire to conduct his business by separating the price of the materials he uses from the price of the labor to apply the materials to his customers' shoes, so as to resell or retail, in effect, shoe findings to his customers apart from his services, it appears that he would be free to do so. If he were to register as a seller and certify that he is purchasing for resale, then he would not be required to pay the tax to the plaintiff distributor, but would be required to collect the tax himself, as a dealer or retailer, from his customers, on the price of the shoe findings sold to them. Ga. L. 1951, pp. 370, 386 (Code, Ann. Supp., §§ 92-3408a, 92-3444a). But if, as in the present case, the shoe repairman conducts his business as it is ordinarily conducted, without making separate charges for labor and for materials, then he must pay the tax on the materials bought to the person from whom he purchases them, i.e., the plaintiff.

In other words, where the sale or use of materials is only incidental to and a part of the service rendered by a shoe repairman to his customers in repairing their shoes, without his making any separate charges to them for such materials apart from his service, then the sales and use tax is to be imposed upon the sale of the materials to the repairman by the distributor, as contended by the plaintiff in this case.

Three cases from other jurisdictions have been cited as involving the question of whether a distributor of leather goods and shoe findings makes a sale at retail to shoe repairmen. In each of these cases the question was raised in litigation between the shoe-findings distributor and the State tax-administration authority, and in each case it was stipulated that the total

charge for repairing shoes on the average job is 30% for the cost of materials and 70% for labor.

In Western Leather & Finding Co. *v.* State Tax Commission, 87 Utah 227 (48 Pac. 2d, 526), under a statute imposing a tax on retail sales of tangible personal property, and defining a retailer as a person doing a regularly organized retail business and selling only to the *user* or *consumer* and not for resale, the court held that the sale to the repairman was not a sale at retail, since the repairman was not a consumer of the goods, but made the retail sale of the articles after purchasing materials for use in repairing shoes. And in Revzan *v.* Nudelman, 370 Ill. 180 (18 N. E. 2d, 219), such a sale was held not to be a retail sale under a statute defining a retail sale as a sale for *use* or *consumption* and not for resale, since the sales to shoemakers of heels and soles were not for use or consumption. The court interpreted "consumption" as meaning destruction by use, and "use" as meaning a long-continued possession and employment of a thing to the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary and occasional.

The Georgia statute, however, defines a retail sale as a sale to a consumer or to *any person for any purpose other than for resale* (Code, Ann. Supp., § 92-3403a (C) (1), supra); a retail sale is not necessarily one made to a consumer or for consumption, under this provision, and so the reasoning of the Utah and the Illinois cases is not applicable here. Furthermore, in a subsequent case, the Illinois Supreme Court stated: "The object and purpose of the Retailers' Occupation Tax Act was to indirectly tax sales of tangible personal property by imposing a tax on the privilege of selling. To tax every sale would result in multiple taxation, so the legislature restricted the tax to the sale at the retail level. The question then is what is the meaning of use or consumption when the motive is to tax the privilege of engaging in the occupation of retail selling. Considered in this sense it seems obvious that the legislature intended and the act contemplates the use or consumption of the property which took it off the retail market so that it would no longer be an object of the tax." (The Georgia act declares that it imposes "a privilege or license tax upon every person

who engages in the business of selling tangible personal property at retail in this State." Ga. L. 1951, p. 362; Code, Ann. Supp., § 92-3402a). The Illinois court further said: "In view of the original reason why the legislature adopted the phrase 'to purchasers for use or consumption,' in consideration of the purpose and motive of the legislature in passing the Retailers' Occupation Tax Act, *the apparent irrelevance of physical consumption to that motive and purpose,* the unquestionable efforts of the legislature to correct the court's construction of the meaning of the terms, and the inconsistency of the court's construction of the meaning of the terms evidenced by the belabored decisions finding the purchaser the user or consumer when the purchases were admittedly actually consumed by another, we do not believe that the strict and narrow interpretation heretofore placed on these terms is in accord with the intention of the legislature, and are of the opinion it should no longer be applied." Modern Dairy Co. *v.* Department of Revenue, (Ill.) 108 N. E. 2d, 8. It appears that the ruling of the Revzan case, supra, is no longer the law in Illinois.

In W. J. Sandberg Co. *v.* Iowa State Board, 225 Ia. 103 (278 N. W. 643), under a statute very similar to ours, defining a retail sale as a sale to a consumer or to any person for any purpose other than for processing or resale, it was held that the sale of shoe findings (excepting heels and taps or half-soles) to a repairman was a retail sale. In disposing of the contention that the use of the materials in making repairs was a resale of the materials by the repairman, the Iowa court stated, at p. 109: "When he repairs the customer's shoes, he is not selling leather, he is selling services as a repairman. The thing that brings him his business is not the brand of soles or heels used, but the character of his workmanship—the kind of a job he turns out." The exception of heels and half-soles from the ruling made appears in a supplemental opinion on rehearing; it was held that such items, having a fixed and definite price, being handled by many retail stores, and requiring a comparatively small amount of labor to attach, should be considered as being resold by the repairman.

We agree that the price of soles and heels could be more readily ascertained than the price to be charged for a small quantity

of dye or cement, a length of thread, or a few nails, but we doubt that soles and heels are sold, apart from the service of attaching them, to any appreciable extent, or that they require less labor to be attached than many other types of shoe findings, such as shank braces or heel and shank grippers. The exception made may be useful in determining which items could be charged for separately by the shoe repairman if he wishes to conduct his business in that manner, as mentioned above, but the exception does not follow from the reasoning of the opinion supplemented. The main opinion in the Iowa case supports the view we have taken in the present case: that leather products and shoe findings, having little or no value or usefulness to the ordinary customer apart from the services of the shoe repairman in applying them, regardless of their actual cost, are incidental to and an inconsequential element of the services rendered in repairing and mending shoes, and so are not resold to the customer by the shoe repairman unless he conducts the transaction in the form of a sale of the materials by making a separate charge for those materials having a readily ascertainable price and representing a substantial part of the cost of the whole job, such as heels, soles, braces, plates, buckles, etc. The defendant shoe repairman did not resell any of the materials purchased from the plaintiff, and so, under the Georgia Retailers' and Consumers' Sales and Use Tax Act of 1951, the plaintiff should collect the tax on the same from the defendant. The Appellate Division of Fulton Civil Court erred in affirming the judgment of the trial court denying the plaintiff's motion for a new trial.

Pursuant to the act of 1945 (Ga. L. 1945, p. 232; Code, Ann., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. Gardner, P.J., Townsend, Worrill, and Carlisle, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. Under the agreed statement of facts in this case, I think that the shoe repairman makes a retail sale of every article or product which is not so inconsequential that no separate charge is made therefor. I think that exception (a) of section 2-A of the sales tax act answers the question this case presents. The question presented must be answered objectively, according to the intention of the legislature, and not on the

basis of how one shoe repairman, or even all of them, handled transactions with customers. Exception (a) is: "Professional or Personal Service Transactions which involve sales as inconsequential elements for which no separate charges are made. . ." The clause, "for which no separate charges are made," does not in my opinion mean that for a separate charge to be made to a customer a shoe repairman must make out a bill and separate the charge. It means that if a shoe repairman places new rubber heels on a pair of shoes, the sale of the heels is not . inconsequential. Common sense and everyday experience are enough proof of that statement without any refined argument. And the charge is made in the eyes of the law even if the separate charge is not on the customer's bill. If anyone doubts the truthfulness of that statement, let him purchase a pair of rubber heels at one place and have them put on his shoes at another. The majority opinion, as to consequential items, changes the tax from a retail sales tax to a wholesale sales tax. In addition, it gives to shoe repairmen the power and authority to write their own sales tax law by electing to make or not make separate charges for substantial and consequential items. The fact that the leather used in a half or whole-sole job somewhat changes form is immaterial. It makes no difference whether the leather or other material is cut in shoe-sole shape by the manufacturer or repairman. There is a sale of material just as where a tailor-made suit of clothes is sold. In my opinion the legislature did not intend that a shoe repairman should pay the tax on his materials in such cases, because they knew that he actually made no separate charge on the bill to the customer. The law was not written for shoe repairmen alone but was written to cover all situations covered by the words of the act. It certainly did not intend that the repairmen in any category write their own law by their method of billing customers. I do not see that any light is shed on legislative intention by arguments as to difficulty of collections. I see no reason why there should be any more difficulty in collecting from shoe repairmen than from various other businesses. I am of the opinion that shoe repairmen should collect the sales tax from their customers on articles or wares which are substantial enough for them to make a charge therefor to the customer.