**SAUNDERS et al.**

v.

**UNITED STATES.**

No. 4793.

United States Court of Appeals,
Tenth Circuit.

July 27, 1954.

O. B. Martin, Oklahoma City, Okl., and Waldo T. Oden, Altus, Okl. (Tal Oden, Altus, Okl., on the brief), for appellants.

Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Perry, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought by the United States under the provisions of the Defense Production Act of 1950 as amended, 50 U.S.C.A.Appendix, § 2105[1] and Ceiling Price Regulation 53[2], (16 F.R. 63–81) to recover damages for eight sales and deliveries of battery lead scrap at over-ceiling prices by the defendants

---

1. Section 405(a) of the Act, 64 Stat. 807, reads in part as follows:

    "(a) It shall be unlawful, regardless of any obligation heretofore or hereafter entered into, for any person to sell or deliver, or in the regular course of business or trade to buy or receive, any material or service, or otherwise to do or omit to do any act, in violation of this title or of any regulation, order, or requirement issued thereunder, or to offer, solicit, attempt or agree to do any of the foregoing."

2. Pertinent portions of Regulation 53 read:

    "Sec. 2. Prohibitions—(a) Against transactions above ceiling prices. Re-

gardless of any contract or other obligation (except as provided in Section 3) on and after the effective date of this regulation no person covered by this regulation shall sell or deliver, or buy or receive in the regular course of trade or business, any of the commodities and services covered by this regulation at a price in excess of the applicable ceiling price. No person shall offer, solicit, attempt, or agree to do any of the foregoing.

    "Lower prices than those set forth in the regulation may be charged, demanded, paid or offered.

\* \* \* \* \*

    "(c) Against evasion. No person shall evade or circumvent the provisions of

Saunders and Gordon.[3] The defendants concede that two of the sales were in violation of the regulations. The trial court held that the remaining six transactions were not sales, but were deliveries prohibited by the Act and Regulations, and entered judgment for the United States for the amount of the overcharges only, as the transactions were held not to be willful violations.

The facts are not in dispute, and the case was tried to the court without a jury upon stipulation and documentary evidence. The defendants were engaged in the business of buying and selling scrap metals, and operated places of business in Harmon and Jackson Counties, Oklahoma. In October of 1951, the ceiling price of scrap lead was 17¢ per pound. Early in October, 1951, Eagle-Picher Company of Dallas, Texas, and the defendants were notified from different responsible sources in the trade that the Office of Price Stabilization had raised the ceiling price of scrap lead to 19¢ per pound. Relying upon this information, plaintiffs agreed to sell to Eagle-Picher a quantity of scrap lead at 19¢, and delivered two car loads under this agreement. On October 7th, Eagle-Picher notified the defendants that the information as to the raise in ceiling price of scrap lead was erroneous and that it could not pay more than 17¢ per pound. It was then orally agreed that the defendants would ship additional quantites of scrap lead which was to remain with Eagle-Picher until such time as a price could be agreed upon. It was understood between the parties that the shipments were not to constitute a sale of the lead, and that no sale was to be made until the ceiling price was increased to 19¢.[4] If there were no increase in the ceiling price and a price could not be agreed upon, the lead or similar material was to be returned to the defendants. When the deliveries were made, Eagle-Picher made the usual percentage payments to the defendants, but it does not appear whether the payments were on the basis of 17¢ or 19¢ per pound. In holding that the last six transactions were not sales, but were deliveries within the meaning of the Act and therefore violations of the Ceiling Price Regulations, the trial court relied principally upon Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3. We said there that the term "sale" and "delivery" as used in the Act, were not synonymous and that "the sale or delivery of steel or iron products in excess of maximum prices constitutes separate and distinct violations." In that case the sale had been made and the discussion of the meaning of the term "sale or delivery" arose in determining whether the Statute of Limitations had run. The court held that even though the limitations provided for in the statute had run as against the sales, the shipments and deliveries were within the statutory period and the action was not barred. The facts there distinguished it from this case because there had been a sale for more than the ceiling price.[5]

██ For the purpose of discussion, we may assume that a delivery without a sale may, in a proper case, violate a ceiling price regulation, but to be a violation, the delivery would necessarily have to be for an amount above the ceil-

---

this regulation by direct or indirect methods in connection with the sale, purchase, delivery, or transfer of the commodities covered by this regulation, either alone or in conjunction with any other commodity, or by way of any commission, service, transportation charge, discount, premium, or privilege, or by up-grading, trade understanding or otherwise."

3. Saunders and Gordon were co-partners, doing business under the firm name of "Southwest Metal and Trade Co."

4. Apparently the interested parties were expecting the O.P.S. to raise the ceiling price. On October 21, 1951, it was raised to 19¢.

5. Bowles v. Hall, D.C., 62 F.Supp. 486, and Bowles v. Beucher, D.C., 53 F.Supp. 984, were also relied upon. In both of the cases there were completed sales in addition to delivery.

ing price. Here, an amount or a price was agreed upon only in case of a sale. The delivery was made with the understanding that the scrap lead or similar material was to be returned if the ceiling price was not raised to 19¢. Battery lead plates are removed from old batteries and sold as lead scrap. Such plates are not pure lead and must be refined through smelting to recover the pure lead from them. The practice in the trade is to sell the lead plates on the basis of the weight of pure refined lead, and to charge the purchaser a smelting charge for recovering the refined lead. The amount of the recovery is substantially the same from all old battery lead plates. Although it is not necessary to a determination of the case, such scrap is in the nature of fungible goods[6] and it was immaterial to either party whether the identical scrap was returned. Title to the scrap had not passed to Eagle-Picher and if, upon receipt, it or like material had been returned to the defendants and later purchased at a higher ceiling price, or if the defendants had retained possession until after the ceiling price went up and then sold and delivered it, there would have been no violation. We see no reason why there should be a violation merely because possession was retained by Eagle-Picher and the sale consummated after the ceiling price had been raised. Nor do we think that this type of a transaction tends to circumvent the Act. The principal purposes of the Act were "To prevent inflation and preserve the value of the national currency; to assure that defense appropriations are not dissipated by excessive costs and prices; * * *." The parties agreed that the 19¢ per pound for the lead was not to be paid unless the ceiling price was raised to that amount. If this did not come about, the lead or its equivalent was to be returned. Under these conditions, the transactions would not be contrary to the purposes of the Act. They would have no effect upon prices or the commerce in lead until it became the property of Eagle-Picher, and it could dispose of it as it saw fit.

Judgment is reversed and the cause remanded with instructions to enter judgment in accordance with the views herein expressed.

6. Williston on Sales, 2nd Ed. Vol. 1, Sec. 159.