37218. SUPERIOR TYPE, INC. *v.* WILLIAMS,
Commissioner.

37219. LITHOPLATES, INC. *v.* WILLIAMS,
Commissioner.

37220. SOUTHERN PHOTO PROCESS ENGRAVING
COMPANY *v.* WILLIAMS, Commissioner.

90

DECIDED JULY 16, 1958—REHEARING DENIED JULY 31, 1958.

*Chas. L. Gowen, Gowen, Conyers, Fendig & Dickey,* for plaintiffs in error.

*Eugene Cook, Attorney-General, Ben F. Johnson, Jr., Hugh Gibert, Deputy Assistant Attorneys-General, Robt. H. Walling,* contra.

TOWNSEND, Judge. ■ The act of 1951 (Ga. L. 1951, p. 360; Code, Ann., Ch. 92-34A) is designed to tax sales at retail. The taxable price in a retail sale must include the tangible personal property sold, including any services that are a part of the sale, valued in money. Code § 92-3403a (E). It is immaterial that it

includes the fabrication of tangible personal property for consumers who furnish, directly or indirectly, the materials used. § 92-3403a (B). But it is not a retail sale, and not taxable, if it constitutes personal service transactions which involve sales as inconsequential elements for which no separate charges are made. § 92-3403a (C) (2) (a).

Examining first the case of Superior Type, Inc., for the purpose of deciding whether its customer, a commercial printer, is primarily buying a service or a piece of metal wrought to certain specifications (tangible personal property), we are called upon to decide which category, personal service or personal property, overweighs the other. From the stipulated facts it appears that the Revenue Commissioner, too, has been troubled by the problem, since the regulations first exempted, then taxed, the finished product. In *Craig-Tourial Leather Co.* v. *Reynolds,* 87 *Ga. App.* 360 (73 S. E. 2d 749) this court was called upon to decide whether a shoe repairman purchasing leather findings for use in repairing shoes was primarily selling services or products, and it was held that since he was primarily selling services the leather findings were not held by him for purposes of resale but were taxable when sold to him by the wholesaler. In that case the court said: "The difficulty in applying [the retail sale] definition is in determining whether the sale of the materials used is an inconsequential element of the service transaction, or whether the service rendered is a part of the sale. We do not think that the actual cost or monetary value of the materials used is determinative . . . we think that the main consideration should be the purpose of the customer, who primarily wishes to buy the skilled services of the shoe repairman because such services cannot be performed by the customer himself because he lacks the equipment, time, or skill required. Under such circumstances, the sale of various grades or qualities of materials by the shoe repairman is really incidental to and but a means of rendering the services which his customers want." In other words, where Mr. X brings in a pair of shoes to be resoled, the sole cut for that particular pair of shoes is of value only to Mr. X, and its value depends almost entirely upon the skill with which it is cut and attached to the boots. In like manner, the "make-up" of metal type for

page 365 of Mr. Y's book is of no value to anyone except Mr. Y, his printer and publisher. The suitability of the make-up for the use intended depends not upon the grade of lead employed but upon the skill with which the type has been assembled. As stated in A. B. C. Electrotype Co. *v.* Ames, 364 Ill. 360 (4 N. E. 2d 476), in a case holding that manufacturers of electrotypes for the use of commercial printers were not engaged in the sale of tangible personal property at retail: "It clearly appears that except for salvage value the materials involved are of no use to any one other than the customer for whom the stereotype or electrotype is made. . . What the customer really pays for is the skill, labor, and use of the machinery and equipment of the electrotyper. The electrotyper is engaged in the business of furnishing that skill and labor and the use of that machinery—not in the sale of tangible personal property at retail." In like manner, in J. A. Burgess Co. *v.* Ames, 359 Ill. 427 (194 N. E. 565), it was held that blueprinters, photostaters, and commercial photographers who reproduced special material to order were not engaged in the business of selling tangible personal property, the case stating: "It is the contention of the department that the paper, with the reproduction on it, is the subject of sale; but this can hardly be true under the act we are considering, because the paper is destroyed when the exposure is made, and it has no further use or value to any one other than the person interested in that particular reproduction. We can perceive no logical difference between the paper upon which a photostatic copy of something is made or a blueprint produced, and that paper which a lawyer uses for writing a will or deed, a doctor for writing a prescription, or an abstractor for showing a chain of title. The paper is a mere incident; the skilled service is that which is required." The closest case on its facts from another jurisdiction appears to be Typekrafters, Inc. *v.* Philadelphia, 34 Pa. D. & C. 82, digested in 139 A.L.R. 386 as follows: "Where it appeared that in the business of typesetting and machine composition, requiring the use of raw type metal which is converted into finished material available for final presswork through automatic machine operations, independent printing houses, in one class of cases, furnished their own type metal to the typesetter who performed the service of

making and setting the type, which was returned to the printer for presswork, the printer being billed solely for the value of the service rendered by the typesetter, while in the second class of cases the typesetter himself furnished the type metal and performed exactly the same service thereon for the printer as in the first class of cases, delivering the finished product and billing him exactly the same amount as under the other situation, plus an arbitrary charge for the type metal which was substantially in excess of the market value thereof, which served as a deposit to insure the return of the metal by the printer and which was refunded to the printer upon the return of the metal, so that in the end the net bill paid in either situation was the same, it was nevertheless held . . . that the first type of transaction was not taxable as a sale, while the latter type of transaction was taxable under a statute imposing a tax upon every sale of 'tangible personal property sold at retail' which provided 'the word "sale" or "selling" means any transfer of title or possession, or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration.' The court said that in the latter situation there was obviously a transfer-of-possession of property belonging to the typesetter, or a license to use the same, while in the former situation there was merely a rendition of services or the performance of labor upon the property of others." It appears obvious to this court that where, as in the first situation set out in that case, the printer furnishes his metal to the typesetter for the purpose of having skilled services performed upon it which result in its being useful to him for the single purpose of printing a customer's order, after which its value is reduced to the same scrap value as when it was furnished to the typesetter, only personal services are involved and the "make-up" is not subject to the sales tax. As to the second situation, our finding differs from that of the Pennsylvania court for this reason: our act provides that where an article is taken in trade the tax levied shall be paid on the net difference of the new articles less the credit for the used articles. Assuming that the plaintiff uses its own lead and the commercial printer replaces the weight of lead used, regardless of the exact nature of the bookkeeping transaction this is substantially a

trade-in of metal for metal. The metal received by the printer differs from the metal returned only in the quantity and quality of personal service rendered upon it by the setting of type. Accordingly, only personal service has been purchased. As to case No. 37218, the trial court erred in holding that the plaintiff Superior Type, Inc., was not entitled to the tax refund in the amount sought.

■ We are also inclined to the opinion that in the remaining cases involving lithoplating and photoengraving the same situation obtains and the printer is purchasing services rather than fabricated products. If we do not rest the cases upon this point it is only because there is not enough information set out in the stipulations to enable this court to ascertain what value, if any, attaches to the plates after their use in the process above referred to. We cannot judicially ascertain whether or to what extent the cost of these plates is predicated on services rather than materials, or whether they have a general value to the public after having been used for the purpose for which purchased. It is, however, perfectly clear that the commercial printer purchases these plates for resale, since in every case he separately charges his customer the cost of the plate, plus a 15% profit, with sales tax added thereon, and the customer is the owner of and entitled to the possession of the property involved. The contention that there was no sale of the plate to the consumer and that this is a mere pricing device must be answered adversely because the question depends upon who has the right of possession of the plate, and it appears from the stipulation that this right of possession is in the consumer. Any other argument is an inferential admission that the plate has no value *except for the transaction for which it was ordered,* and, if that appeared, we would immediately hold that the transaction involves a purchase of personal services only. The other contention is that the sale is not a retail sale because of the provisions of Code § 92-3410a as follows: "If a purchaser who gives a certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him, and the cost of the property to him shall

be deemed the gross receipts from such retail sale." Thus, if a retailer of electric appliances took a washing machine to his home for his personal use he would at that time be liable for the tax regardless of the fact that at some subsequent time he sold the machine in the regular course of his business. Thus, also, if the commercial printer obtaining a photoengraving should first make personal use of it by printing up postal cards to be sold by himself he would be liable for the tax although he thereafter used the plate to fill an order for a customer and, as a part of the delivery of the order, sold the plate to the customer. But the use made of an electroplate or photoengraving the image for which is furnished by the customer of the commercial printer for the purpose of printing up material for such customer, including the reproduction of the image, is not a use contemplated by this provision of the law, for the reason that it is solely for the benefit of the buyer who ultimately receives both title and right of possession of the photoengraving and pays the sales tax thereon. Its purchase in the first instance by the printer is for the purpose of resale after use for the benefit of the person to whom it is resold, by printing up the copy which the customer has ordered. In like manner, the vendor of the washing machine, in installing the appliance in the home of the purchaser, is performing a service for the purchaser rather than for himself in making the installation, even though he might refuse to make the sale without also receiving the profit to be derived from the installation. The words of the statute "holding for sale in the regular course of business" refer to holding for sale to the general public. If the printer ordered a number of photoengravings which he contemplated selling for profit to some as yet unascertained purchaser, he would be holding for sale in the regular course of business. Where the plate is purchased for the benefit of the customer who has placed his order, and is then resold to such customer, the use is for the benefit of the customer, and Code § 92-3410a does not apply.

The trial court also erred, as to cases 37219 and 37220, in holding the plaintiffs, Lithoplates, Inc., and Southern Photo Process Engraving Company, not entitled to the tax refunds in the amount sought, requiring reversal of the 3 cases.

*Judgments reversed. Gardner, P. J., and Carlisle, J., concur.*