166 So.2d 865

Guy SPARKS, Commissioner of Revenue,

v.

LOUISVILLE & NASHVILLE RAILROAD
COMPANY.

3 Div. 984.

Supreme Court of Alabama.

June 25, 1964.

Rehearing Denied Sept. 3, 1964.

MacDonald Gallion, Atty. Gen., and B.
Frank Loeb, Asst. Atty. Gen., for appellant.

R. E. Steiner, III, M. R. Nachman, Jr.,
and Steiner, Crum & Baker, Montgomery,
for appellee.

GOODWYN, Justice.

Proceeding by taxpayer for refund of use taxes paid under mistake of law or fact.

On June 5, 1961, the taxpayer, Louisville & Nashville Railroad Company, filed with the Alabama State Department of Revenue, pursuant to Code 1940, Tit. 51, § 913, a petition for refund of use taxes in the amount of $14,721.47 allegedly paid by it under mistake of law or fact for the years 1958 through 1960. The petition was denied on June 8, 1961.

On June 21, 1961, taxpayer filed in the circuit court of Montgomery County a petition for mandamus against the Commissioner of Revenue for refund of said use taxes. No question is presented as to the propriety of this form of relief. See: Haden v. Rhodes, 271 Ala. 344, 123 So.2d 916. The trial court, after an oral hearing of the evidence, held that taxpayer was entitled to such refund in the amount of $13,200.39 and directed repayment thereof. The Commissioner of Revenue brings this appeal from that judgment. There is no dispute on this appeal as to the amount of the refund.

As a prelude to its judgment, the trial court made the following findings:

## "FINDINGS

"L&N during the years 1958 through 1960 erroneously and under mistake of law and fact paid to the State of Alabama use taxes totaling $14,721.47, of which $13,200.39 is now recoverable under the refund petition of June 5, 1961. Title 51, s 913, Code of 1940. The transactions upon which these taxes were erroneously paid were repair or service transactions whereby the L&N by contract with independent contractors sent its journal bearings and wheels to a repairer by weight, and received the repaired wheels or journal bearings from the contractor. The nature and extent of a typical operation were described in detail by witness Marion Rodgers, of the American Brake Shoe Company; typical worn and repaired journal bearings and photographs of typical worn and repaired wheels were introduced as evidence in connection with the Rodgers testimony and were examined by the Court.

"These repair transactions were those of labor or service designed to repair worn or damaged wheels or journal bearings, and the transactions are so characterized by the rules of the Association of American Railroads, to

which taxpayer and all other Class I railroads operating in the United States belong.

"Before undertaking detailed findings as to these repair transactions, the Court observes and finds that the transactions involved in this case are, according to the undisputed testimony of witness Rodgers, similar in all respects to those involved in the case of Gulf, Mobile & Ohio Railroad Co. v. State of Alabama, No. 35360, decided by this Court on February 28, 1961, and not appealed by the State of Alabama. Indeed, by stipulation the testimony of Rodgers in the GM&O case was introduced in these proceedings. Moreover, the GM&O decree, also introduced in evidence, is hereby adopted as applicable and controlling in this case, since the transactions upon which L&N erroneously and mistakenly paid use taxes during 1958–1960 were precisely the same as those in the GM&O case.

"Since the Alabama use tax is not imposed upon service or repair transactions, but instead upon the storage, use, or other consumption of taxable [sic] [tangible] personal property purchased at retail (Title 51, s 788), no tax law required L&N to pay these taxes. The repair of wheels and journal bearings cannot be considered a 'purchase' within the meaning of Title 51, s 787(i). Indeed, L&N is billed for the labor performed in the course of the repair operation. It does not purchase journal bearings or wheels from an independent contractor.

"Journal bearings with worn linings are shipped to the American Brake Shoe Company, in a typical instance, by weight over an extended period, and bearings with a restored lining are shipped back. When new babbitt is added on occasion, a charge for it is separately stated. Of the bronze or brass backing of journal bearings, 96½ per cent of such bearings are returned intact; 2 per cent lead and 1½ per cent zinc are added and consumed in the repair process, to assure chemical content equivalent to the specifications of the Association of American Railroads. The addition of this amount of lead and zinc does not result from loss of such elements in the course of their use. The melting and remolding process, described in detail by witness Rodgers in this case, as in the GM&O case, is the only method of repairing the damaged journal bearings.

"Similarly, the only method of repairing the wheels is by melting and recasting. The wear in the wheels, as described by Rodgers and the photographs, is in the flange and tread of the wheels. Of the melt for the repair of the wheels, 99⅝ per cent of it is in the old wheels and .44 per cent is the addition of ferro-manganese and ferro-silicon, to assure a chemical content in accordance with the specifications of the Association of American Railroads. Again, these elements are not lost because of prior use of the wheels.

"Wheels and journal bearings are sent in for repair by weight; they are held on deposit or consignment by the repairer; and they are not segregated from other car wheels or journal bearings.

"The immateriality of this intermingling at the plant of the repairer is clear from the entirely fungible nature of the wheels and journal bearings. Rodgers stated that one wheel or journal bearing was 'the same as' any other, in terms of its composition and usefulness. This fact has long been recognized in the railroad industry, and it has been immaterial to railroads that the identical wheel or journal bearing might not be returned. By the undisputed testimony, each wheel and journal bearing is by its nature and by mercantile usage treated as the equivalent of any other unit. The wheels and journal bearings are fungible goods,

within the meaning of the Alabama Uniform Sales Law, Title 57, s1(1) [Section 1(1) provides: " 'Fungible Goods' means goods of which any unit is from its nature *or by mercantile usage* treated as the equivalent of any other unit." (Emphasis supplied)]. See Saunders v. United States, 214 F.2d 744, 746, (10 Cir.1954); Superior Type, Inc. v. Williams, 98 Ga.App. 89, 105 S.E.2d 14. Accordingly, the State erroneously contends that the intermingling of wheels and journal bearings at the repair plant indicates a purchase or exchange of different car wheels and bearings. As the Georgia Court observed in Superior Type [Inc.] v. Williams, which involved an attempted sales tax upon a taxpayer who reproduced copy in metal type for commercial printers on metal either furnished in advance or replaced later by the commercial printing customers of the taxpayer (105 S.E.2d at 17):

" 'Assuming that taxpayer uses its own lead and the commercial printer replaces the weight of lead used, regardless of the exact nature of the bookkeeping transaction, this is substantially a trade in of metal for metal. The metal received by the printer differs from the metal returned only in the quantity and quality of personal service rendered upon it by the setting of type. Accordingly, only personal service has been purchased.'

■ "In summarizing the transactions at bar, Rodgers testified that the repair transactions constituted only the imposition of a personal service or repair on the metal sent in by the taxpayer, with the minimal additions of chemical components mentioned above. It is clear that this taxpayer has paid a labor or service charge to independent contractors for the repair of its wheels and journal bearings. The attempt by the State to impose a use tax on such charges is illegal and void. Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233.

"The undisputed testimony is that the process performed by the American Brake Shoe Company, as a typical repairer, takes an existing item which has become imperfect and restores it to its original condition as nearly as possible so that it may be used efficiently by the railroad. Without question, the railroad industry—in contexts quite unrelated to taxation—has long characterized these operations as labor or service transactions.

■ "Respondent's denial of L&N's petition for refund as to taxes in the amount of $13,200.39, without interest, constituted a failure to perform a ministerial duty imposed on him by the revenue laws of Alabama, and particularly by Title 51, s 913. The purpose of this section compels the refund of taxes in this amount because they have been erroneously paid. See Horn v. Dunn, [Bros., Inc.] 262 Ala. 404, 79 So.2d 11; Curry v. Johnston, 242 Ala. 319, 6 So.2d 397; Haden v. Rhodes, 271 Ala. 344, 123 So.2d 916.

"Moreover, while unnecessary to a decision of this case, this Court observes that it should not countenance a refusal by the Commissioner of Revenue to follow its final adjudication in the GM&O case—a decree from which the State of Alabama did not appeal. Under the Alabama use tax statutes, regulations, and apposite judicial decisions, these transactions do not constitute the storage, use, or other consumption in the State of Alabama of taxable [sic] [tangible] personal property purchased at retail, nor was the property involved purchased at retail by L&N within the meaning of the Alabama use tax statutes. The retention of these tax moneys by the State of Alabama is illegal and without authority of law. They should be refunded in the amount of $13,200.39.

"It is significant that there have been a regular and special session of the legislature since this Court's decision in the GM&O case, and no changes have been made in the applicable use tax law. This legislative inaction occurred even though important changes were written into the tax laws to redefine key statutory words. For example, House Bills 482 and 483 rewrote the definition of 'machines' and 'machinery' in the sales and use tax statutes. The Alabama franchise tax on foreign corporations was revised by House Bill 1292 so as to redefine 'capital employed.' This Court is of the opinion, therefore, that the subsequent reenactment of sales and use tax statutes after its GM&O decision, without indication of legislative disapproval of that decision, may be treated as legislative approval of its judicial construction. State v. Birmingham Rail [& Locomotive] Co., 259 Ala. 443, 66 So.2d 884; State v. [H. M.] Hobbie Grocery Co., 225 Ala. 151, 142 So. 46; Helvering v. [R. J.] Reynolds Tobacco Co., 306 U.S. 110. [59 S.Ct. 423, 83 L.Ed. 536].

"Finally, it is highly pertinent to observe that the effect of the taxing action which the State here urges is as devastating as it is invidious and unequal. For the State here says that this railroad should pay over and over again each time it has the same article of personal property repaired. Rodgers has testified that these properties are repaired approximately every two years and that their life is indefinite. Such a taxing procedure is confiscatory and should fail.

\*　\*　\*　\*　\*　\* "

We are in accord with the conclusion reached by the trial court in ordering a refund of the use taxes. However, we do not agree with the statements made in the trial court's opinion to the effect that the amendments of the use tax law after the judicial construction of § 787(i) in the Gulf, Mobile & Ohio Railroad Co. case constituted a legislative adoption of such construction. It has been held that the doctrine does not apply to decisions of an inferior or intermediate court. See: Rea v. Keller, 215 Ala. 672, 673, 112 So. 211; Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 146 A.L.R. 917, 921; Annotation: "Presumption that, in re-enacting statute, legislature adopted previous judicial construction thereof, as applied to construction by trial or intermediate appellate court," 146 A.L.R. 923.

We think the trial court's opinion deals adequately with the question presented, and no need for further discourse appears.

The judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.