*Will Ed Smith,* for Dowdy.

### 37230. MEAD CORPORATION v. STRICKLAND.

UNDERCOFLER, Justice.

Mead Packaging Corporation makes cardboard beverage cartons in an Atlanta manufacturing plant using B-11 presses. It purchases the steel dies used to cut and score the cardboard from Chempar Corporation in Pennsylvania, which owns an exclusive license on the patent for the die-making process. Its manufacturing process, which employs extensive technology including computers, results in highly accurate dies with close tolerances. Mead seeks a refund of the sales taxes paid on the purchase of these dies from Chempar, claiming that the transaction between them is a "personal service," and thus exempt from the Georgia Sales and Use Tax Act, Code Ann. Ch. 92-34A,[1] under Code Ann. §§ 92-3403a (C) (2) (a).[2] The trial court denied relief and Mead Packaging appeals. We affirm.

Code Ann. § 92-3403a (C) (2) (a) provides in pertinent part that the "terms 'sale at retail,' 'use,' 'storage,' and 'consumption'. . . ". . . shall not include the following: (a) Professional, insurance, or *personal service transactions which involve sale as inconsequential elements for which no separate charges are made* nor services rendered by repair men for which a separate charge is made." (Emphasis supplied.) Mead Packaging argues that the purchase of the dies is a personal service because the greater part of the cost involves the computer technology — the service for which it is paying. On the other hand, the Commissioner urges that the die is merely a tool purchased and used by Mead Packaging until it is disposed of after about 250,000 impressions are made. We agree with the Commissioner.

We find this case unlike the printing cases, wherein printing plates, made to a customer's specifications which are of no use to anyone but the customer, were held to be exempt as personal services. *Hawes v. Higgins-McArthur Co.,* 117 Ga. App. 738 (161 SE2d 915) (1968); *Undercofler v. Foote & Davies, Inc.,* 115 Ga. App. 341 (154

---

[1] This Act has been recodified as Code Ann. Ch. 91A-45; Acts 1978, p. 309; 1979, p. 5, (eff. Jan. 1, 1980).

[2] The periods for which refunds are sought are 1972 through May 31, 1977 ($16,324.00) and June 1, 1977 through March 31, 1980 ($4,283.44).

SE2d 454) (1967); *Superior Type, Inc. v. Williams,* 98 Ga. App. 89 (105 SE2d 14) (1958). The Commissioner has aptly pointed out that these dies,[3] which are ordered by die number, can be used by anyone owning a B-11 press. Compare, *Undercofler v. Whiteway Neon Ad., Inc.,* 114 Ga. App. 644 (152 SE2d 616) (1966) with *Hawes v. Dimension, Inc.,* 122 Ga. App. 190 (176 SE2d 602) (1970) and *Craig-Tourial Leather Co. v. Reynolds,* 87 Ga. App. 360 (73 SE2d 749) (1952). We therefore hold that the trial court properly granted summary judgment to the Commissioner.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 8, 1981 —
REHEARING DENIED APRIL 21, 1981.

*Bogart & Moss, Joel Y. Moss, John L. Williams,* for appellant.
*Arthur K. Bolton, Attorney General, David A. Runnion, Assistant Attorney General,* for appellee.

---

[3] " 'There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance . . .' " *Turner Communications v. Chilivis,* 239 Ga. 91, 93 (236 SE2d 251) (1977), quoting *Crescent Amusement Co. v. Carson,* 187 Tenn. 112, 116 (213 SW2d 27) (1948).